WARREN W. CATCHINGS et al. *v.* CHRISTOPHER A. MANLOVE et al.

1. FRAUDULENT ASSIGNMENT: VOLUNTARY ASSIGNMENT FRAUDULENT PER SE AS TO EXISTING CREDITORS.—A voluntary assignment by an insolvent debtor is fraudulent *per se* as to existing creditors, whether made with a fraudulent intent or not.   See 1 Fonbl. Eq. B. 1, ch. 4, sec. 12, note *a*; *Gilmore* v. *North American Land Co.*, 1 Peters, c. c. 460 ; 1 Story Eq. Jur., sec. 355.

2. SAME: VOLUNTARY ASSIGNMENT OF CHOSE IN ACTION FRAUDULENT AS TO EXISTING CREDITORS.—All species of property, not specially exempted by law from seizure for the payment of debts, are within the statute against fraudulent conveyances; and hence the voluntary assignment by an insolvent debtor of a chose in action is fraudulent and void as to his existing creditors.   See 4 Johns. Ch. 450 ; 20 Johns. 554 ; 5 Barbour, 433 ; 11 N. H. R. 312, 326 ; 27 Maine R. 539 ;  *Wright* v. *Petrie*, 1 S. & M. Ch. R. 320.

3. SAME: POLICY OF LIFE INSURANCE IS A CHOSE IN ACTION, AND WITHIN THE STATUTE AGAINST FRAUDULENT CONVEYANCES.—A policy of insurance upon the life of a person is a chose in action, and as such liable to the payment of the debts of the party in whose favor it is issued; and is therefore within the statute against fraudulent conveyances.

4. SAME: SAME: CASE IN JUDGMENT.—A debtor in insolvent circumstances, on the day before his death, made a voluntary assignment to his wife and children of a policy of insurance upon his life for five thousand dollars:—*Held*, that the assignment was fraudulent, and the avails of the policy liable for the payment of the debts of the decedent.

5. CHANCERY: PLEADING: FACTS ONLY NEED BE PLEADED, NOT CONCLUSIONS OF LAW.—It is a rule of pleading that the pleader is required only

to state the facts necessary to make out his defence, or to sustain his suit; he is not bound to state the legal conclusion from the facts pleaded: therefore, in a bill to set aside a fraudulent assignment, it will be sufficient if the complainant show that the assignment was voluntary and that he was a creditor at the time it was made, without averring any fraudulent intent on the part of the assignor.

6. SAME: JURISDICTION OF EQUITY TO SUBJECT PROPERTY FRAUDULENTLY ASSIGNED TO PAYMENT OF DEBTS.—A court of equity has the power not only to set aside a fraudulent conveyance so as to disembarrass complainant's remedy by execution at law, but, also, where the property cannot be reached by execution, to subject the property fraudulently assigned directly to the payment of complainant's debt, under its own jurisdiction. See *Hunt* v. *Knox*, 34 Miss. R. 655.

APPEAL from the Chancery Court of Warren county. Hon. Jacob S. Yerger, chancellor.

*W. Yerger*, for appellants.

The sole question presented by this record is, whether a voluntary assignment to his wife and children, made by an insolvent debtor, of a policy of insurance on his life taken out by him, is valid as against creditors.

It is conceded that the debtor had a right to make a voluntary assignment of this policy, but this voluntary settlement must be made when the circumstances of the donor should be such as to entitle him to make a transfer of his property. If, in embarrassed circumstances and actually insolvent, he makes a voluntary settlement for the purpose of securing to his family that provision which he otherwise would be unable to effect, the settlement is fraudulent. Bunyon on Assurance, 181, 182.

Choses in action being the property of the debtor may be followed into the hand of a voluntary assignee, and subjected in equity to the payment of his debts. 1 S. & M. Ch. R. 319–321; 3 Atk. 357; 4 Johns. Ch. 451; 20 Johns. 554; 1 A. K. Marshall R. 108; 11 N. H. R. 312; 2 Sand. Ch. 494; 9 Paige, 182.

It is a principle of the common law, and lies at the foundation of all property, that the whole of a man's property shall be devoted to the payment of his debts; that he cannot gratuitously give away his property; and that he must be just before he is generous.

A life-policy is property. It is a chose in action, which is

assignable; otherwise the insurance on lives would lose half its usefulness. Angell on Insurance, sec. 325–329, et seq., and note 2 to sec. 329.

*H. J. Harris*, for appellees.

The policy of insurance, it will be admitted, was a *chose in action*. In fact, it was a *chose in action* dependent upon the contingency that Jackson died during the existence of the policy, differing, in this respect, from ordinary *choses in action*, such as bills of exchange, promissory notes, &c., under which there must be, at some time, an absolute right of action. It is clear that *choses in action* are not included in the *terms* of our Statute of Frauds and Perjuries. That statute extends only to gifts, grants, and conveyances of lands, tenements, or hereditaments, goods or chattels, or any rent, common or other profit or charge out of the same, and to bonds, suits, judgments, or executions. The provisions of our statute are the same with those of 13 Eliz. c. 5, from which it was copied, with the omission of a few formal words. The statute of Elizabeth was merely declaratory of the common law, the language of the enacting clause being, "it is therefore *declared*, ordained," &c. In *Twyne's case*, Lord Coke says: "Note well this word (declare) in the Act of 13 Eliz., by which the parliament expounded that this was the common law before. And according to this resolution it was decreed, Hil. 36 Eliz., in the Exchequer Chamber." In *Cadogan* v. *Kennett*, Cowp. 432, Lord Mansfield said: "The principles and rules of the common law, as now universally known and understood, are so strong against fraud in every shape, that the common law would have attained every end proposed by the statutes of 13 Eliz. c. 5, and 27 Eliz. c. 4." Chief Justice Marshall, in delivering the opinion of the court, in the case of *Hamilton* v. *Bussell*, 1 Cranch, 309, said: "The Act of Assembly which governs the case appears, as far as respects fraudulent conveyances, to be intended to be co-extensive with the Acts of the 13th and 27th Eliz.; and those Acts are considered as only declaratory of the principles of the common law. *The decisions of the English judges therefore apply to this case.*" See also *Mecker* v. *Wilson*, 1 Gallis. 419; Fonbl. Eq. 278. If, then, the

statute of 13 Eliz. c. 5, was merely declaratory of the common law, and established no new principles, it would seem to be clear that a *chose in action* could not have been within the contemplation of that statute, for the manifest reason that, as they were not the subjects of "gifts, grants, or alienations," they were not within the mischiefs which the statute, in affirmance of the common law, intended to remedy.

But, as we have the high authority of Chief Justice Marshall for saying that the decisions of the English judges, in the construction of the 13th Eliz., are applicable to a case arising under the Virginia statute, (which is the same as ours,) I proceed to a brief review of such of the English decisions as bear upon the question.   It may be admitted that a few early English cases can be found which decide that gifts of *choses in action*, if intended or operating to defraud creditors, are within the provisions of the statute of 13th Eliz.; and upon a proper case made by bill will be set aside as fraudulent.   Of that character is the case of *Taylor* v. *Jones*, 1 Atk. 600, where a settlement of *stock in the funds*, for the benefit of the defendant for life, of his wife for life, and afterwards for the benefit of his children, was declared to be fraudulent in favor of simple contract creditors. But it will be observed that one of the reasons assigned by the master of the rolls for his decision in the case was, that there was a trust left to the husband under the deed, and that he continued in possession.   In the case at bar, the assignment was absolute, and in the nature of things there could have been no trust for the husband.   Conceding, however, that the case of *Taylor* v. *Jones*, and *Horne* v. *Horne*, Ambler, 79, and a few others, are authorities in favor of the complainants, I proceed to show that they have been overruled by subsequent decisions, and the reverse principle settled as the law.   In the case of *Dundas* v. *Dutens*, 1 Ves. Jr. 196, a bill was filed to set aside a post-nuptial settlement of stock, upon trust to pay one hundred pounds per year to the wife, and the remainder to the husband for life, with remainders to the children.   The settlement having been made *after* the marriage, there was no valuable consideration for it.   The questions were, whether the settlement was void against creditors, and whether the court

would give execution against the fund. Lord Thurlow decided both questions in the negative, and dismissed the bill. He went even so far as to say, what I admit is not the law here, that a man having stock in his own name could not be sued for the purpose of having it applied to satisfy creditors. "Those things," he said, "such as stock, debts, &c., being choses in action, are not liable. They could not be taken on a *levare facias.* I did not think you could have got so near it as that case in Atkins." * * * "It is quite new to me that this court can touch it. I have never heard of such a thing." It is conceded that, in this State, a creditor, upon a proper case shown, is entitled to the assistance of a court of equity to have subjected to the payment of his debt property not liable to execution—that is to say, what is denominated equitable assets; but the question now under consideration is, whether an assignment of a *chose in action can* be fraudulent under our statute; and it does not follow that it may be, merely because, if held by the debtor, a court of equity would enable the creditor to reach it, and appropriate it to the discharge of his debt. In the case of *Rider* v. *Kidder,* 10 Ves. 360, Lord Eldon more than intimated his dissent from the doctrine laid down in *Taylor* v. *Jones.* "It is clear," he says, "stock cannot be attached in the life of the party. Such was the language of Lord Thurlow in *Dundas* v. *Dutens,* and also in the case of Sir Alexander Leith, where a bill was filed to try whether this court would give execution in aid of the infirmity of the law; and it was held, there was no jurisdiction." * * * "The question is very nice and difficult. In *Taylor* v. *Jones,* the master of the rolls got at it; but he got at it through a doctrine which, as reported, it is very difficult to maintain; and which seems to have surprised Lord Thurlow very much in *Dundas* v. *Dutens.* If therefore the decision was to turn upon the latter doctrine, I should wish to look at those authorities."

. In *Grogan* v. *Cooke,* 2 B: & Beat. 233, Lord Thurlow said: "The opinion in *Horne* v. *Horne,* Ambl. 79, is so anomalous and unfounded that forty such opinions would not satisfy me."

It might be sufficient to rely upon these opinions of the two most eminent chancellors of England; but in addition to their

authority, I ask the attention of the court to the case recently decided in the Queen's Bench—*Sims* v. *Thomas*, 12 Ad. & Ellis, 536. In that case, the following points were decided by a bench composed of such distinguished common law lawyers as Chief Justice Denman and Justices Littledale, Patterson, and Williams.

" Where defendant was sued by the insolvent on a bond conditioned for the payment of an annuity to the insolvent, held that he might set up the assignment under the insolvency as a defence, but that such defence was met by showing that the insolvent had assigned away his interest in the bond before the insolvency, although the assignment reserved a contingent interest to the insolvent, which had not yet vested."

" And that the defence on such last-mentioned assignment was not met by pleading that the assigment was without consideration and fraudulent and void as against creditors, *the bond,* (which was assigned before statute of 1 and 2 Vict. c. 110, s. 12,) *not being goods and chattels within statute* 13 *Eliz. c. 5: that act applies only to such property as may be taken in execution."*

" The same law as to insolvent's interest in a covenant for payment of the annuity, contained in an indenture securing the annuity on land, with powers of distress and entry, and with a demise of the land, to be void on the payment of the annuity."

This case, I contend, covers the whole ground. It is a clear and emphatic decision that a *chose in action* is not within the statute of 13 Eliz., and that an assignment of it cannot be fraudulent, as against creditors, under that statute.

In further support of the doctrine I contend for, I would refer the court to the decisions which have been made upon the Act of 13 Eliz., with respect to copyhold lands. These lands being held at the will of the lord according to the custom of the manor, it has been decided that the statute of Westm. 2, c. 20, which gives the *elegit,* does not extend to them, because the lord cannot have a tenant brought in against his will. *Rowden* v. *Malster,* Cro. Car. 42. And not being liable to be taken in execution, it has been held that they are not within the statute of 13 Eliz.

*Mathews* v. *Fraser*, 1 Cox, 275; Bacon's Abr., (Bouvier's ed.,) Fraud, c.

The English elementary writers lay it down as a well-settled principle that *choses in action* are not within the statute of 13 Eliz. Atherly on Marriage Settlements, 220; 1 Roberts on Fraudulent Conveyances, 421. Chancellor Kent in his Commentaries, (vol. 2, p. 442,) admits that the English text-books recognize this to be the law. It is true, he proceeds to question the correctness of the doctrine, and refers to the cases of *Bayard* v. *Hoffman*, 4 Johns. Ch. 450, and *Hadden* v. *Spader*, 20 Johns. 554, as in conflict with it. Upon a careful perusal of this latter case, I think the court will readily see that it has but little bearing on the point under consideration. It was the common case of a judgment creditor, after execution returned *nulla bona*, filing a bill to reach property held in trust for the judgment debtor. The answer of the defendant showed that the judgment debtor had assigned to him his goods, stock in trade, &c., in trust for creditors, on certain conditions, which the creditors refused to accept; and that, upon their refusal, a new assignment was made, under which he sold the property at auction, and the creditors under the new assignment refusing to accede to its terms, *he held the proceeds of the sale in trust for the judgment debtor*, and also a sum of money *assigned to him in like manner*. The case, therefore, establishes nothing more than that the money of a judgment debtor held in trust for him may be reached in a court of equity, and applied to the payment of his debts—that is to say, after judgment and return of execution *nulla bona*. The question whether an assignment of a *chose in action*, clear of any trust for the assignor, was fraudulent, did not arise, nor was it decided. In delivering the opinion of the court, in the case of *Hadden* v. *Spader*, Judge Woodworth admits that the cases of *Taylor* v. *Jones*, 2 Atk. 600, *Horne* v. *Horne*, Ambl. 79, and *Partridge* v. *Gopp*, Id. 596, had been questioned and overruled by the late adjudications; and he recognized the former, and refused to be controlled by the latter, because of the doctrine held in the New York courts that English decisions prior to 1775 were binding, while those subsequent to that date were not. A perusal of the opinion of Judge

Platt, in the case of *Hadden* v. *Spader*, will show how different were the facts of that case from those of the one now before the court, and how far short it fell of deciding the point I am now discussing. "The appellant," he says, "consented to take an assignment from an insolvent debtor, not only in payment of his own debt, (which he had a right to do,) but of all the residue of his goods; that he agreed to convert them into money, and to hold it for the benefit and subject to the control of the debtor." And in reference to the *scope* of the decision, he says: "But I am not prepared to extend this doctrine to any other cases than those wherein the trustee received goods *liable in themselves to execution*, under circumstances which imply fraud, in fact, or in law, as against creditors. In an abstract view, it may appear proper to extend the remedy in favor of creditors, to every *chose in action* of the debtor. But in my judgment, such power has not yet been conferred on our courts of justice."

Judge Story, also, admits that the English courts have established the doctrine that a voluntary conveyance of property not liable to execution cannot be fraudulent against creditors. (1 Story Eq., sec. 367.) In a note to sec. 368, he gives his own views in the following language: "Whatever may be the doctrine on this subject, a distinction may, perhaps, exist between cases, where a party actually indebted converts his existing *tangible property* into stock, to defraud creditors; and cases, where he becomes possessed of stock without indebtment at the time; or, if indebted, without having obtained it by the conversion of any other tangible property. Where tangible property is converted into stock to defraud creditors, there may be a solid ground to follow the fund, wherever found." It will not be contended, I presume, that the money paid by Jackson, as the premium on the policy of insurance, was *tangible property*, in the sense in which those words are used by Judge Story; and, in the face of the allegation in the bill, that the policy was taken out and regarded by Jackson as a basis of commercial credit, it cannot be pretended that the premium, even if it were tangible property, had been converted into a different species, for the purpose of defrauding creditors. If, then, the doctrine laid down by Judge Story is correct, and courts of equity will, for

the benefit of creditors, reach equitable assets only under the circumstances he mentions, it would seem to be clear that this court cannot set aside the assignment of the policy as fraudulent under our statute; and especially should it decline to do so, when it bears in mind that the assignment was not and could not be coupled with any trust for the assignor—a fact favorable to the defendants that did not exist in the cases I have above cited and relied upon as authorities.

The only late English case I have found, which seems in conflict with my position, is, that of *Norcutt* v. *Dodd*, 1 Craig & Phillips, decided by Lord Cottenham, in 1841, in which, while it is admitted that an assignment of a *chose in action* cannot, during the life of the assignor, be fraudulent under the statute of Eliz., yet the rule, it is said, is different after his death, because creditors might then reach all his personal property of whatever kind. If by this is meant that an assignment, not fraudulent at the time it was made, may become so by the death of the party, or, in other words, by the act of God, the doctrine is one to which this court will not readily give the assent of its judgment. *Actus Dei non facit injuriam.* In none of the reported decisions I have examined, in reference to the assignments of *choses in action,* and the construction of the Statute of Frauds when applied to them, is any distinction drawn between their validity before and after the death of the party. It may be true, as Lord Cottenham said in the case, that the assignment of the annuity in that instance was fraudulent, under the united operation of the statute of Eliz., *and the Insolvent Debtor's Act;* because, by the provisions of the insolvent law then in force, (7 Geo. 4, c. 57, s. 32, and 1 & 2 Vict. c. 110, s. 59,) "every voluntary assignment of real or personal estate, security for money, bond, bill, note, money, property, goods, or effects whatsoever," even to creditors, or in trust for creditors, is declared fraudulent and void, as against the assignee of the insolvent. How much stronger this Act is than the statute of Eliz., I hardly need stop to point out. The decisions under it go a great deal further than those made upon the Statute of Frauds. Under the English insolvent laws, it has been decided that a voluntary payment, by one in insolvent circumstances, even in discharge of a *bona*

*fide* debt, was fraudulent. *Herbert* v. *Wilcox*, 3 M. & P. 515; S. C. 6 Bingh. 203 ; *Sharpe* v. *Thomas*, 4 M. & P. 87 ; *Thompson* v. *Jackson*, 3 Man. & Gr. 621. It will not be denied that no such decision would have been made under the statute of 13 Eliz. In the case of *Norcutt* v. *Dodd*, as the assignor of the annuity was insolvent at the time the assignment was made, and was himself a party defendant, the only question which arose was, whether his act was fraudulent under the insolvent laws ; and the Lord Chancellor was not called upon to decide any thing as to the effect which his mere death would have had upon the transaction. That the death of a party cannot have the same effect as his insolvency is evident from this, that the assignee of the insolvent can impeach his conveyance as fraudulent ; and in *Norcutt* v. *Dodd*, the bill was filed by the assignee ; but it is a well-established principle that an executor or administrator cannot impeach the deed of his testator or. intestate. *Ellis* v. *McBride*, 27 Miss. R. 155 ; *Gully* v. *Hull*, 31 Id. 20 ; *Winn* v. *Barnett*, 31 Id. 653 ; *Wright* v. *Wright*, 1 Ves. Sr. 409. Where A made a fraudulent sale of his goods to B, and delivered possession of some of them in his lifetime, and the rest came to the hands of his administrator, it was holden, in an action brought by B for those goods, that the administrator could not plead the statute of 13 Eliz. c. 5, nor maintain the possession of the goods, even to satisfy creditors. 4 Bac. Abr. 412, Fraud, c. ; *Hawes* v. *Loader*, Cro. Ja. 270 ; *Osborne* v. *Moss*, 7 Johns. 161 ; *Drinkwater* v. *Drinkwater*, 4 Mass. R. 357.

*C. L. Buck*, on same side.

The cases of *Donovan* v. *Fain*, Hopkins, 82, 83 ; *Erwin* v. *Oldham*, 6 Yerger, 185 ; *Ewing* v. *Cantrell*, Meigs, 364 ; *Sims* v. *Thomas*, 12 Adol. & Ell. 536 ; 40 Eng. C. L. R. 117 ; *Ottey* v. *Lewis*, 7 Price's E. 274 ; *Pool* v. *Glenn*, 2 Iredell, 129 ; *Doak* v. *Bk. State*, 6 Id. 309, 337 ; 1 Story Eq. Jur. sec. 367 ; 2 Kent Com. (8 ed.) 562 ; *Sims* v. *Thomas*, 2 Adol. & Ell. ; and the cases cited in Bunyon on Life Assurance, 183—all clearly prove that a debt or chose in action, although due, or stocks, was not subject to the principles of the common law, or by the rules of equity to payment of debts. They could not be reached either in law or

equity, unless a statute made them so subject. Vide *Norcutt* v. *Dodd*, 18 Eng. Cond. Ch. R. 100; 1 Cr. & Ph. 100; 1 Smith's Lead. Cases, 13, and notes, 44; Atherly on Mar. Sett. Law Lib.

It is equally well settled that property, which is not subject to payment of debts either in law or equity, if *transferred voluntarily*, is not within the statute against fraudulent conveyances. A creditor cannot complain of a transfer of a thing which neither in law nor equity he is entitled to proceed against for satisfaction of his debt.

A policy on a man's life is a chose in action, if bound as a debt before death of policy. The above rules will exempt it from execution in law or equity, unless we have some statute making it liable.

We have no such statute, unless the attachment laws be such. These only apply to an *existing indebtedness*—a debt due from garnishee. The language of the statutes all are, "Where party is indebted," &c. In *Sale* v. *Sanders*, 24 Miss. R. 24, the court held "a debt not due" was not "an indebtedness" within the statute. A policy, if a debt, is one not due before death; hence was not liable to garnishment.

But, again, all the statutes of the State, making debts liable to pay judgments, in terms confine them to *garnishees residing in Mississippi*. They only *subject* debts due to the party in Mississippi (after judgment obtained) to its satisfaction. Debts due out of the State to the party are not embraced by this or any other statute. They are left precisely as they were before. But Hopkins R. 213, 2 Paige Ch. 606, 2 Dev. & Batt. Eq. 138, are opposed to this view under the peculiar legislation of those States.

Suppose, then, this case is governed by the law of Mississippi, and a judgment had been obtained, this policy or debt would not be the subject of garnishment or execution of any kind. And if a bill was filed in New York against the company, then the law of New York is equally explicit as the case of *Donovan* v. *Fain* proves.

But, again, when a debt or service or compensation of any kind is not due, but when the party by his own act may defeat it, it is not liable in law or equity. *Browning* v. *Battis*, 8

Paige Ch. 568; 11 Ala. R. 386; 2 Kent Com., 8 ed., 148, note. As when a party's compensation depends on his performing certain services, and he may, by refusing to perform them, be not entitled to any thing. So, here, if at any time the party failed or refused to pay his annual premium or payments, the policy is defeated; and *no creditor has a right to pay* them, unless such right is invested in the policy. He can thus defeat it.

The administrator cannot complain only as judgment creditor. 30 Miss. R. 487; 27 Id. 155; 31 Id. 653.

He must be a judgment creditor, or, what is equivalent, a creditor of estate declared insolvent at the time of bringing suit. 30 Miss. R. 487; 31 Id. 454; *Case of Brown, Bro. & Co.* v. *Bk. of Miss.*, 10 S. & M. 556; 31 Miss. R. 653.

The assignment to the wife is good in equity in this State without intervention of third person. *Ratcliff* v. *Dougherty*, 24 Miss. R. 181; *Warren* v. *Brown*, 25 Id. 66; *Fatheree* v. *Fletcher*, 31 Id. 265.

The husband may relinquish to wife his claim to her choses in action. *Galego* v. *Galego*, 2 Brockenbrough, 285.

*George L. Potter*, on same side.

HANDY, J., delivered the opinion of the court:

This bill was filed by, and on behalf of, certain creditors of Cavil O. Jackson, deceased, for the purpose of subjecting to the payment of their debts against him the proceeds of a policy of insurance upon the life of the decedent obtained by him in his lifetime.

It appears by the statements of the bill that Jackson died in September, 1855, having on the day of his death made his last will and testament; that he was indebted to the complainants, Catchings & Putnam, in the sum of $6,858.56, and to the complainants, Miles & Adams, in the sum of $13,867.43, which debts were duly proved; and that the executor named in the will, soon after his qualification, reported the estate insolvent, and it was so declared by the Court of Probates, and all the claims against it were referred to commissioners, who reported the same, showing their amounts and the names of the various creditors, among

which are the complainants above named, which report was confirmed; that the assets of the estate, as shown by the report, amounted to about the sum of seven thousand dollars, exclusive of the policy of insurance; that, at the time of the execution of his will by said Jackson, he executed an assignment of said policy of insurance, which was for the sum of five thousand dollars, to his wife and two children, transferring the same in writing to his wife and two children; that doubt having arisen as to who was entitled to receive the money due upon said policy of insurance, the insurance company paid the same to the executor, under an agreement made by the parties claiming under the assignment, that he should hold the same until the rights of the parties, creditors and assignees, should be settled by law, and that the executor now holds the money under that agreement; that the assignment of said policy was made by the testator without consideration, and is voluntary, and that the executor refuses to return the fund in his hands, as a part of the testator's estate, because of the claim of the parties under the assignment.

A demurrer to this bill was sustained, and the bill dismissed, and from that decree this appeal was taken.

In the argument of the case here, two questions have been presented for consideration:

First. Whether the transfer of the policy can be held to be fraudulent as to creditors, upon the mere ground that it was voluntary and without valuable consideration, and that the assignor was indebted to insolvency at the time, without the allegation or proof of fraudulent intent in making it.

Second. Whether the fund received upon the policy can be subjected to the claims of creditors, as the policy was a mere *chose in action*, and not subject to execution, when it was assigned.

The first question arises upon the objection to the bill, that it merely alleges that the assignment was voluntary and without consideration, and does not allege that it was made with a fraudulent intent.

It sufficiently appears, by the statements of the bill, that Jackson was largely indebted, even to insolvency, at the time of the assignment, and that it was a mere gift for the benefit of his wife and children; and it is well settled that a conveyance or assign-

ment, under such circumstances, is fraudulent as to creditors and void in law, as to them, whether it was made with an actual fraudulent intent or not.   The fact that the party was insolvent at the time of the transfer renders the mere voluntary assignment to a wife or children void in law as to creditors, because the debtor has no right to withdraw his property from liability to pay his debts, to the prejudice of his creditors.   1 Fonbl. Eq., B. 1, ch. 4, sec. 12, note *a.*   In such a state of case, it results, as a conclusion of law from the facts, that the conveyance is fraudulent as to creditors.   *Gilmore* v. *North Am. Land Co.,* 1 Peters C. C. R. 460 ; *Thompson* v. *Dougherty,* 12 S. & R. 448 ; *Reade* v. *Livingston,* 3 John. Ch. R. 500 ; 1 Story Eq. Jur. sec. 355.   Hence it is not necessary, in such a case, to aver that the conveyance or assignment was made with a fraudulent intent; for it is a rule of pleading, that a party is only required to state the facts neces- sary to make out his claim or to sustain his action, and the law will draw the legal conclusion from those facts.

The rule is otherwise in the case of a conveyance made upon a valuable consideration ; for there the conveyance being *prima facie* fair and valid, it is incumbent on the party impeaching it to aver and prove that it was made with a fraudulent intent.

The assignment in this case appears to have been of a very considerable part of the property of the assignor; and though a party may lawfully make a gift, to his wife or child, of a reason- able part of his property, if he be not insolvent at the time or largely indebted, and such gift will be valid, if made *bona fide,* as against subsequent creditors, yet, if he be insolvent at the time, the gift cannot stand against the claims of creditors then exist- ing, whether made with an actual fraudulent intent as to them or not.   *Salmon* v. *Bennett,* 1 Conn. R. 525 ; *Hinde's lessee* v. *Long- worth,* 11 Wheat. 199–213 ; 1 Story Eq. Jur. sec. 356, 357.

Upon the second question, it is insisted that the assignment is not within the statute against fraudulent conveyances, because the thing transferred was a mere *chose in action,* which could not be taken in execution, and that the statute applies only to property which could be reached by execution.

The adjudicated cases upon this question are conflicting.   In England, the early decisions held that such property was within

APRIL TERM, 1861.     669

Warren W. Catchings et al. *v.* Christopher A. Manlove et al.

the statute; but the later cases appear to settle the rule to the contrary, and hold that the conveyance or assignment cannot be declared void and the property subjected to the claims of creditors, under the statute, unless it be property liable to be taken under an execution at law. 1 Story Eq. Jur., sec. 367, and cases there cited. The former rule is sanctioned by the American decisions: 4 Johns. Ch. 450; 20 Johns. 554, 555; Barbour, 433; 11 N. H. R. 312, 326; 27 Maine R. 539; and has been followed by the chancellor of this State in the case of *Wright et al.* v. *Petrie et al.*, S. & M. Ch. 320. This rule we consider to be founded on the better reason.

The right of the creditor to subject the property of his debtor to the payment of his debt applies to whatever is in law the property of the debtor, except such parts of it as are specially exempted by law; and if this right be not available at law by reason of the nature or condition of the property, that is a sufficient reason why it should be enforced by a court of equity. It is upon this ground that a court of equity subjects equitable assets to the payment of debts, when the remedy at law has been exhausted and is ineffectual. And it would, indeed, be strange, that a court of equity, which is competent to give relief against equitable assets on the mere ground that they could not be reached at law, should be incompetent to give relief against assets fraudulently transferred by the debtor, so as not to be within the reach of an execution at law; considering that the fraud itself is one of the very grounds of the jurisdiction of that court.

The statute has generally received a liberal construction for the suppression of fraudulent arrangements against the rights of creditors; but to restrict its operation to cases of fraudulent gifts or conveyances of such property as might be seized under execution, would be to destroy its beneficial effect, and to allow its policy to be evaded. It would give the debtor the perfect power to dispose of his property so as to defeat the rights of creditors, by conveying it for negotiable securities, for the purpose of defrauding his creditors, and then transferring the securities and placing them beyond the reach of creditors. If the conveyance was made to a party who purchased the property in good faith and without notice of the fraudulent intent, it might be impossi-

ble for the creditor to subject either the property conveyed or the securities given for it to his debt, and the statute would be ineffectual against such a fraudulent arrangement.   This would open a wide door for fraudulent conveyances, and would frustrate the manifest policy of the statute, unless the plain rights of creditors, which it was the object of the statute to protect, could be enforced, in such cases, in equity.   If such a rule were sanctioned, it would produce the strange result, to deny to the creditor his right to subject his debtor's property to the payment of his debt by resort to a court alone competent to give the relief required by the circumstances, and to deprive a court of equity of one of its clearest branches of jurisdiction—to give relief against fraud.

The rule under consideration appears to proceed on the idea that a court of equity has no power to do more upon a bill to set aside a fraudulent conveyance than to declare it void, and thereby remove the obstacle to an execution at law; and inasmuch as, after such a decree, the execution could not be levied of the *chose in action*, therefore that the court is incompetent to give relief.

But there appears to be nothing in the statute to justify this view.   The mode of proceeding to give to creditors the benefit of the debtor's property fraudulently conveyed appears not to be indicated, nor in anywise restricted, by the statute; and he must, therefore, be left at liberty to resort to that mode which the nature and circumstances of the fraudulent arrangement may render necessary to obtain his rights.   The spirit of the statute plainly is, to enable the creditor to subject to the payment of his debt the property of his debtor fraudulently conveyed, whatever may be its form, and it appears to be an utter subversion of that object to allow the fraudulent purpose to be consummated by denying to the creditor his substantial right, by reason of the form in which the property is placed by the fraudulent contrivance.   And yet such would be the consequence, in many cases, unless a court of equity had power to subject the *choses in action*, fraudulently transferred, to the payment of debts.

But according to the rule which we have held, and which is well supported by authority, this view is unsound; for a court

of equity has the power not only to set aside the fraudulent conveyance, but to subject the property conveyed to the payment of the debt, under its own jurisdiction. *Hunt* v. *Knox et al.*, 34 Miss. R. 655. And the principle is there sanctioned "that every species of property belonging to the debtor may be reached and applied to the satisfaction of his debts," and that " the powers of a court of equity are perfectly adequate to carry that principle into effect."

It is urged, as an additional objection to the bill in this case, that the complainants do not show that they had a judgment at law or any thing equivalent to it, at the time of filing the bill.

This appears to be an error of fact as to the statements of the bill. It alleges that the claims of the complainants were proved and allowed ; that the estate was reported and declared insolvent ; and that their claims were reported by the commissioners of insolvency as duly established claims against the estate ; and all this was before the filing of the bill. These allegations are equivalent in law to a judgment and return of "Nulla bona" at law, and are a sufficient basis for the filing of the bill.

We are of opinion, according to these views, that the court erred in sustaining the demurrer, and dismissing the bill ; and the decree must be reversed, the demurrer overruled, and the cause remanded for answer within sixty days.