## No. 7783.

### ALLEN, NUGENT & CO. VS. A. CARRUTH.

One who, in consenting a mortgage, has specially waived the homestead, cannot *quoad* the mortgaged property, claim the homestead, overruling Hardin vs. Cerf, 29 A. 333.

APPEAL from the Fifth Judicial District Court, parish of East Baton Rouge. *McVea, J.*

C. D. Favrot for plaintiffs and appellants :

A person who, in obtaining a loan of money, mortgages his property to secure the payment of the debt, and renounces his right of homestead upon the same property, is estopped from afterward claiming said homestead. Dissenting opinion of Chief Justice Manning, in Hardin vs. Wolf & Cerf, 29 An. 333 ; 29 An. 64.

J. & G. W. Burgess and McGloin & Nixon for defendant and appellee :
The law creating the right of homestead is based upon reasons of public policy, and the exemption cannot be waived in any case.

The case at bar is not one where there is a special waiver as to a particular piece of property ; but the waiver is a general one as to all the property of defendant.

Special or general, such a waiver is illegal, and does not estop defendant from claiming his homestead. C. C. art. 12 ; Holman vs. Johnson, Coup. 343 ; Chitty on Con. 653 ; 29 An. 333 ; 29 An. 330 ; 22 N. Y. 244 ; 49 Tenn. 387 ; 74 N. C. 350 ; 10 How. Pract. Rep. 282 ; 22 N. Y. 250.

The opinion of the court was delivered by
WHITE, J. A majority of this court, two dissenting, held in Hardin vs.

Wolf, 29 A. 333, that the benefits of the homestead act of 1865 could not, as a matter of public policy, be waived ; and that hence, a debtor who in consenting a mortgage had expressly waived the benefits of the homestead, could recover the homestead as against the mortgage creditor. This case presents the identical question, and we are urged to re-examine it. The opinion in Hardin vs. Wolf was prepared by one now, alas ! lending no longer the aid of his mature judgment and ripe scholarship to the discharge of the grave and solemn duties this court is called upon to perform. The opinion gives evidence of that care and research which was the leading feature of Judge Egan's mind. The reverence we have· for his memory, the knowledge of how much weight his opinions carried· with them, have caused us to hesitate, to doubt the wisdom of re-- examining a question concluded by his voice, when the reconsideration· was to be had without the assistance of his reason and learning. After much reflection, however, we have concluded that as one decree rendered by a divided court was not the proper subject for the rule of *stare decisis,* it was a duty imposed on us to decide the issue upon our convictions, and in so doing we would best do reverence to the opinions of one who made the performance of duty the aim of his judicial career. Approaching, then, the question as a new one, we have patiently gone over the grounds urged in favor of the nullity of the waiver, and have been unable to give our adhesion to them. The statute certainly contains no limitation on the power of the owner of the homestead to alienate or encumber it as he please, and if in his hands it is subject to all the elements of perfect ownership, *usus, fructus,* and *abusus,* we cannot deprive the· owner of any of the rights flowing from such dominion, one of which is. the right of alienation, which embraced *a fortiori* the right to renounce· any claim to the thing alienated or encumbered. We think that the declaration that the owner who has the statutory power of alienation cannot, in encumbering his property, waive *quoad* the property encumbered his right to claim a homestead, would be on our part judicial legislation by which we would deprive the owner of his right of perfect ownership, and write in the statute by interpretation a restriction on the power of alienation. The conclusion reached by this court in Hardin vs. Wolf was founded, as we take it, on three propositions :

First. That in our sister States homestead laws have by the prevailing opinion been considered as importing a denial of the power of a debtor to waive his claim to avail himself of their benefits.

Second. That motives of public policy point to the necessity of construing the homestead law in such a manner as to imply an inhibition on the power to waive.

Third. That while the statute in terms does not restrict the right

·of the owner, yet such restriction results by necessary, or at all events, reasonable implication from the context of the statute.

To none of these propositions can we give our assent.

1. Whatever may be the opinions in other States, they ought not to control or guide us in enforcing or interpreting our own statute, unless it were made manifest that the statutes of other States were identical with our own, which is not the case. Even pretermitting this view, an examination of the authorities relied on in Hardin vs. Wolf, we think, will make it clear that they are inapplicable to the question now before us. Without reviewing them in detail, we think they all either depend on the peculiar provisions of the statute law which they interpret, or if they formulate a doctrine, simply teach that a general renunciation of the right to claim the benefit of homestead or exemption laws cannot be enforced. Upon even this proposition there is division of authority; taking it, however, as sound doctrine, it does not meet the instant issue, which is not whether a general renunciation of the right to claim the benefit of homestead or exemption laws is binding, but whether a special renunciation as to particular property can be enforced. The difference between the two cases is self-evident; the one being a divestiture on the part of the debtor of his right to claim the benefits of the laws of the land as to his present and future property, the other being simply the exercise of his power of ownership over the particular property the subject of a particular contract. In fact, we think a careful scrutiny of the cases in the books will make it clear that the fundamental distinction is carefully observed between the right of an individual when not inhibited by positive law to do as he pleases with his own, and his want of power to make, as to all future property, a law of his own different from and in violation of general laws applicable to all others. We have found no case teaching that where one is the owner of property, and has the absolute and perfect ownership of it, he cannot do with it as he pleases, within the limits of prohibitory laws.

2. With the motives of public policy we have nothing to do, in the absence of all restraint on the power of the owner in the terms of the law. If, however, we were at liberty through our views of public policy to go beyond the terms of the statute, we would hold that public morality would best be subserved by enforcing the performance of obligations legally entered into; that the interest of society and of individuals would best be guarded by discountenancing all attempts to procure credit by the renunciation of rights of property, and, after reaping the benefits of the credit, seek to frustrate payment by an attempted exercise of the rights renounced. The foundation of public policy is the principle of common honesty. True, the motive of the law of 1865 may have been to secure the family, and thus save society from pauperism,

'but this purpose, we think, also dictated the absence of the restriction on the power of the head of the family to dispose of all his property as he pleased, in order to enable him to use all his resources for his family's benefit. To hold that when he had so done, because his contract was in the form of a mortgage with express waiver, instead of a sale, would, in our view, be sacrificing the substance for the shadow, would be holding that the complete did not include the partial power of alienation.

3. The context of the law it is said makes it evident that the benefit of the homestead was intended for the family, and, therefore, as the benefit was intended for the family, the renunciation of the head of the family ought not to prevail. The fallacy lies in supposing the property to be that of the family ; but by the very terms of the statute the property must belong to the debtor ; and if it did not, of course no question could arise, for the execution only issues against the debtor and his property. Nor do these views conflict with Van Wickle's case, 29 A. 331, wherein it was held that the act of consenting a mortgage created no legal implication of waiver of homestead, which was predicated upon the theory that in the absence of express waiver the parties must have contracted with reference to the general law. Our conclusion is that the waiver in the act of mortgage frustrates the claim of homestead, *quoad* the property mortgaged.

It is therefore ordered that the judgment below be reversed in so far as it recognizes and enforces the claim for homestead ; that the claim to homestead *quoad* the property mortgaged be rejected ; and that in all other respects the judgment below be affirmed. The costs of both courts to be borne by the plaintiff in injunction.

———

DISSENTING OPINION.

DeBLANC, J. I adhere to the opinion overruled by my colleagues. That opinion is sustained by adjudications of the highest courts of several of our States, and fully justified by the terms of the law.

The homestead is not granted to the debtor. Howsoever destitute he may be, he—if alone—is not entitled to and cannot claim it. It is granted to his family, to those dependent on him for support, and he cannot—at his will and pleasure—waive and nullify a right conceded to them.

The homestead forms no part of the creditor's pledge. The law ordains that—as the bed and clothes of the family—it shall be exempt from seizure and sale *under execution,* and this it ordained in the interest of the wife and children of the debtor, of those he has to support and shelter ; and if he can waive their right to the homestead, he can also

waive the exemption which protects their clothes and their bed, their linen and their shoes.

To give a mortgage on the land and property subject to the homestead, is—in substance, if not in terms—to waive.it. It is to consent in advance and absolutely that, under specified circumstances, it shall be seized and sold. We have—nevertheless—adhered to the decisions holding that the giving of a mortgage is not a waiver of the homestead. To overrule those decisions and our own, what is invoked? Less than a distinction, or—at most—a distinction which is not in the meaning, but in exclusively the syllables and sound of the words used to renounce the exemption.

One cannot always renounce even that which the law has established in his favor. He can only do so when his renunciation does not affect the rights of others ; and one—whether a husband or parent—cannot, legally, relinquish that which is expressly intended for the benefit of his family and the public good.

C. C. art. 11, 12, 1892 (1886).

In the opinion read by Mr. Justice Egan, a majority of this court held—not that a debtor could not sell the property which constitutes the homestead—for, when he does, it is almost invariably for its full value and in the interest of his family ; but that, according to the imperative terms of the law, such property is exempt from seizure and sale *under execution.*

The homestead laws may be unwise, inexpedient : they may tend to affect and destroy private credit ; but they—in no way—transgress any rule of morality. Their object is less to prevent the sale, than the sacrifice of the family's home, and of that which is indispensable, not to their comfort, but to their existence. Those laws are published and promulgated, noted by, familiar to, and a part of the contract of those who—after their promulgation—consent to sell on credit ; and if any one of the several exemptions granted in every State can be considered as dishonest, then they are all dishonest.

MARR, J. I adhere to the views expressed in the opinion of the court and in my separate concurring opinion in Hardin vs. Wolf & Cerf, 29 An. 333 ; and I concur in the foregoing dissenting opinion of Mr. Justice DeBlanc.

Rehearing refused.