CHARLES MALLOY and others v. THOMAS J. BRUDEN and wife and others.

*Remark of Judge—Statute of Limitations—Dower—Adverse Possession.*

1. The remark of a judge, that he felt compelled to exclude a certain deed as evidence of title but regretted to do so, is not the subject of exception—especially so where the objection is not made in apt time.
2. In order to put the statute of limitations in motion against the true owner of land, it is necessary that there should be an actual, open, visible occupation of the land by another, begun and continued under a claim of right. The assertion of a mere claim of title, as for instance the payment of taxes thereon, is not sufficient.
3. A widow to whom dower is assigned comes in under the heir to whom her possession can never become adverse.
4. Adverse possession under color of title must be *continuous;* a gap, though occurring during the period the statute was suspended, is sufficient to destroy its continuity.

(*Holdfast* v. *Shepard*, 6 Ired., 361, cited and approved.)

CIVIL ACTION to recover land tried at Spring Term, 1881, of RICHMOND Superior Court, before *Gudger, J.*

Archibald Fairley died in 1831, seized of the lands in controversy, and leaving a widow and an infant child Mary Ann. The lands consisted of several distinct, but contiguous tracts, two of which were allotted as dower to his widow, who took possession thereof, and continued it until her death in 1857, she having in the meantime intermarried with one Stewart. The daughter, Mary Ann, was born in 1827, and was married to Alexander Malloy in 1842, by whom she had one child, Alexander Malloy, jr., born in September, 1846, and a few days thereafter her husband died. In 1852 she intermarried with Archibald Patterson, and had by him four children, to wit, Catherine, born 20th of July, 1853 ; Eliza, born 20th May, 1855, and two others subsequently born, all of whom, with the husbands of such as are married, constitute the defendants. Their mother, the said Mary Ann, died in 1863, and her second husband, Patterson, died in 1871. Alexander Malloy, jr., died in 1878, and the plaintiffs are his heirs at law on the paternal side, and so claim the lands, while the defendants are those, who, together with himself (Alexander Malloy, jr.) were the only heirs at law of his mother, the said Mary Ann, and claim through her. The action begun on the 20th of January, 1880. On the trial, the plaintiffs offered in evidence a deed from Alexander Malloy, sen., and wife Mary Ann to Charles Malloy, dated October, 22nd, 1844, which was objected to by the defendants on account of a defect in the probate thereof, and the judge sustaining the objection, excluded it, remarking at the time, and in the presence of the jury, that while he felt compelled to exclude the deed as evidence of title, he regretted to do so.

The plaintiffs then offered the same deed as color of title, and also one from Charles Malloy to the said Alexander, sen., dated 7th May, 1845, in both of which the lands were

alike described as consisting of six distinct tracts, all con‑ tiguous, but each with its own separate and distinct boun‑ daries, covering, however, the lands described in the com‑ plaint, and two of them being subject to the widow's dower.

The plaintiffs introduced one Charles Malloy, who testi‑ fied that soon after the death of Alexander Malloy, sen., in 1846 he qualified as guardian of Alexander Malloy, jun., and as such took control and management of the lands outside of the dower of the widow of Archibald Fairley (then Mrs. Steward) and listed them for taxation, and paid the taxes thereon from 1846 to 1867, when his said ward became of age. That he took possession of the part cover‑ ed by the dower in 1857, at the death of Mrs. Stewart, by placing a tenant on the land, and that he continued the possession thereof, cultivating it, either himself or by ten‑ ants, until 1864, when the actual possession was discon‑ tinued, and was not resumed until 1866, when he again put a tenant upon it, who cultivated it until the ward be‑ came of age in 1867, who then took possession for himself and continued to cultivate it until his death in 1878, the lands being known, all the while, as the "Fairley Lands."

After the death of the said Alexander, jun., the defend‑ ants took possession, and have continued to hold it ever since.

At the request of the plaintiffs' counsel the following in‑ structions were given to the jury :

1. If they should believe that the six tracts of land de‑ scribed in the two deeds, were embraced and included in one common boundary, then the possession of one tract would be construed as the possession of all embraced in that common boundary.

2. If the statute of limitations began to run against Mary Ann Malloy at the death of her first husband in 1846, and before her second marriage in 1852, then no supervening

disability of either coverture or infancy would have the effect to stop it.

For the defendants, the following instructions were asked:

1. That if the jury believe all the evidence offered on the trial the plaintiffs were not entitled to recover.

2. That there was no evidence of any adverse possession of the lands described in the complaint sufficient to ripen color of title.

3. That there was no evidence of the possession of any of the six tracts of land described in the deed under which the plaintiffs claim title.

4. That there was no evidence of adverse possession by the guardian, Charles Malloy, before the year 1857.

5. That the fact of his paying taxes on the land was no evidence of adverse possession sufficient to ripen color of title.

6. That when land consists of several distinct tracts, the possession of one, although adjoining, will not ripen color of title into a good title for such of the tracts as are not taken into actual possession.

7. That the possession of land under color of title, to enable a party to recover it, must have been continuous and adverse and under a claim of title.

His Honor declined to give the first, second, third and fourth instructions prayed for by the defendants, and in response to the others, told the jury that the deeds offered in evidence were color of title, and that there was no evidence of title in the plaintiffs, other than that which could be derived from the possession of the land under color of title. That to enable them to recover under such color of title, the jury must be satisfied that those under whom they claimed had taken actual possession of the lands, and continued to hold it adversely and notoriously for seven years claiming the land as their own, not counting the time elapsing between the 20th May, 1861, and the 1st January, 1870; and

that if any of the parties against whom such possession was held were at the time of its commencement under disability, either of coverture or infancy, the statute of limitations would not run against them. But on the other hand, if they believed the statute began to run against Mary Ann Malloy, after the death of her first husband in 1846, then no supervening disability would obstruct it. And he further instructed them, that the possession of the guardian, Charles Malloy, would be the possession of his ward; and that there was some evidence of his having taken such possession as would ripen color of title, as to the sufficiency of which they were to determine. That his paying taxes on the land would not, of itself, be evidence of such possession, but if they should believe "that the widow of Archibald Fairley held her dower in conjunction with, and subordinate to the claim of the guardian of Alexander Malloy, jun., her possession would not be adverse to said guardian, and the plaintiff would be entitled to recover, if the guardian had thus had possession for seven years."

The jury rendered a verdict in favor of the plaintiffs. The defendants moved for a new trial, assigning for cause :

1. Errors committed in the instructions given to the jury.

2. Those committed in withholding instructions asked for by the defendants.

3. The remark of the judge in the presence of the jury, that he regretted to exclude the deed from Malloy and wife to Charles Malloy as evidence of title—with reference to which last assignment, His Honor states that no exception to the remark was taken at the moment, and none until the motion for a new trial was heard.

After consideration and argument, the motion for a new trial was allowed and the verdict set aside, from which order the plaintiffs appealed.

*Messrs. Burwell & Walker,* for plaintiffs.
*Messrs. Battle & Mordecai* and *McNeill,* for defendants.

Ruffin, J.  From the manner of stating the case on appeal, it is apparent, we think, that the new trial was given to the defendants, in the court below, not as a matter of discretion on the part of the judge, but because it was thought that, in law, they were entitled to it; and that His Honor anticipated, and intended that the correctness of his action in that particular, should become the subject of review in this court, as a question of law.  So understanding it, we have considered the question, which otherwise we should not have assumed to do.

As to the remark made to counsel by the judge, at the moment of excluding the deed offered in evidence by the plaintiffs, we do not perceive how it can be legitimately complained of.  It surely was no intimation of any opinion on his part whether any fact was fully or sufficiently proved; nor was there anything in its nature that could possibly influence the jury and incline their minds for or against either party.  So far as appears from the statement of the case, it was simply an act of complaisance to counsel, intended to lighten the effect of the disappointment, which the rejection of the testimony had produced.  The position of a judge would be rendered intolerable, if every word uttered during the progress of a trial could be thus wrested, and made the subject of an exception; and especially should this not be permitted when a party takes his chances for a verdict, and only urges an objection when the opportunity for correction has passed away.

Upon other grounds, however, we are of opinion that a new trial was properly awarded to the defendants.  It is not necessary that we should consider them all, for if any one of the exceptions taken was, in fact, well taken, it is the same, in its consequences, as if all were so, since it is impossible to know certainly upon which of the several phases of the case the jury acted in determining their verdict.

As we understand a portion of the charge to the jury, it

was in effect, to tell them, that notwithstanding the guardian of Alexander Malloy, jr., may not, upon the death of the father in 1846, have taken actual possession of the land unaffected by the grandmother's dower, and his whole management thereof consisted in merely listing it for taxation, and paying the taxes thereon, still if they believed that the grandmother recognized her grandson's title, and consented to hold under him, then her possession became his, and would ripen his title under color into a perfect title. Thus interpreted, we conceive it to be unsupported by authority, or any just reason.

Although the guardian, when examined as a witness, made a general statement that at the death of Alexander Malloy, sen., in 1846, he took the management for his ward, of so much of the land as was not covered by the dower of the widow of Archibald Fairley, it clearly appears, when taken in connection with other parts of his testimony, that such management was confined to his having listed the land and paid the taxes due thereon, and that there was no such actual occupation of the land by him, or any one for him, as would give notice to the true owner, Mrs. Mary Ann Malloy, and put in motion the statute of limitations against her. To have that effect, it was not sufficient to assert a mere claim of title, but there must have been some actual, open and visible occupation of the land, or some part thereof, begun and continued under a claim of right. " The principle on which the statute of limitations is predicated," says Angell on Limitations, § 390, " is not that the party in whose favor it is invoked, has set up an adverse claim for the period specified in the statute, but that such adverse claim is accompanied by such invasion of the rights of another as to give him a cause of action, which, having failed to prosecute within the limited time, he is presumed to have surrendered." A mere claim of title of itself gives no right of action to the owner, and there can be no *adverse possession*

against which the true owner cannot have an action to recover the possession.

Nor is it possible that the want of such notoriety and openness of hostile possession, could be remedied by any concessions that might be made to the ward's title by the tenant of the dower. Upon the decease of the ancestor, Archibald Fairley, the title and the possession of the land, subject to his widow's right to dower, was cast upon his daughter, Mary Ann, as his only heir; and upon the assignment of her dower the widow took possession, not adversely to the heir, but in subserviency to her title, and so continued to hold; and neither she, herself, nor any one claiming under her, could acquire any right against the heir by virtue of the statute of limitations, at least not without some open positive change of possession, accompanied with some manifestation of an unequivocal purpose to hold adversely to her, such as would have subjected the party coming in under such change of possession to an action at the instance of the heir. There is no pretence in the case that anything occurred to disturb the relations established by law, between the dower tenant and the heir, or which could possibly justify an action on the part of the latter against the former. Upon the termination of the dower estate by death in 1857, the guardian took actual possession for his ward, and then i was, and not until then, that adverse possession, visible and exclusive, and such as challenged the owner to an action, commenced for the first time; and it was the duty of His Honor so to have instructed the jury, and his failure to do so amounted to an error, such as entitled the defendants to have the verdict against them set aside, and a new trial given them.

And even if His Honor had fixed that period as the one at which the adverse possession was first taken as against the owner, (then Mr. Patterson,) there was still another error committed, of which the defendants might justly have com-

plained. It is not denied that the actual possession of the guardian, after having continued from 1857 to 1863, was then interrupted and abandoned during the years 1864–'65— no one occupying the land, throughout the whole of those two years, in any way that could possibly put the owner to bringing a possessory action for it; and according to all the authorities this hiatus occurring in the actual occupation of the land, put a stop to the statute the nrunning against the owner. Ang. on Lim., § 413. *Holdfast* v. *Shepard,* 6 Ired., 361.

At all times there is a presumption in favor of the true owner and he is deemed by law to have possession coëxtensive with his title, unless actually ousted by the personal occupation of another; and so too whenever that occupation by another ceases, the title again draws to it the possession, and the seisin of the owner is restored; and a subsequent entry, even by the same wrongdoer and under the same claim of title, constitutes a new disseisin, from the date of which the statute takes a fresh start.

The fact that such an interruption occurred duing the interval between 1861 and 1870, when the statute of limitations was suspended, cannot affect the case. In contemplation of law, it was a fact accomplished that in 1864–'65 the owner made entry upon the land, and thereby destroyed the effect of all prior adverse possession ; and as a *thing done,* it must be attended with all the consequences as if done at any other time.

We take it that it would hardly be disputed that the acknowledgment of a debt, as still subsisting made in 1865 by a bond debtor, could be given in evidence against him, in an action brought upon the bond in 1870, and thereby repel the presumption of payment, and if so, why not the fact that, by entry, the owner of land had broken that continuity of possession upon which the bar of the statute depended ?

It must be apparent from the foregoing considerations, that the new trial was properly awarded the defendants, and we need not therefore consider the other points made in the case.

As to the suggestion made here, that the plaintiffs were entitled to recover of the oldest defendant, since as to her the statute prevailed, even if it commenced to run in 1870, it is sufficient to say, that no such judgment was asked for. So far as the case discloses, a judgment as to all the defendants was insisted on; and even if satisfied therefore that they had established their case as to that one (which, however, is far from being so,) we could not say that the court erred in not granting them that which they failed to ask for.

The judgment of the court below in granting the new trial is affirmed.

No error.                                    Affirmed.