## THE STATE v. HAMPTON MOODY.

*Slander of Women—" Incontinency."*

To constitute the offence of slandering an innocent woman by an allegation of incontinency, it is necessary to prove that the words alleged to have been spoken amounted to a charge of actual, definitive, illicit sexual intercourse.

(*Watt* v. *Greenlee*, 2 Dev., 87; *McBrayer* v. *Hill*, 4 Ired., 136; *Lucas* v. *Nichols*, 7 Jones, 32, and *State* v. *Aldridge*, 86 N. C., 680, cited).

CRIMINAL ACTION, tried before *Gilmer, Judge*, at Fall Term, 1887, of YADKIN Superior Court.

The indictment, drawn under the Act of 1879, (*The Code*, §1113,) charges the defendant with a wanton and malicious attempt to destroy the reputation of one Lucy B. Easter, an innocent woman, in saying of her, "she had promised to let me have criminal intercourse with her, and that I intend to have that thing." Upon the trial the words were proved to have been spoken, and were admitted to be false.

After conviction, defendant's counsel moved an arrest of judgment, as he had, before pleading, moved to quash the indictment, for that it charges no offence; and each motion being denied, and judgment pronounced against the defendant, he appealed.

*The Attorney General*, for the State.
No counsel for the defendant.

SMITH, C. J. The first enactment, made in 1808, in resolving a doubt whether any redress was open to a woman accused of a want of virtue, declares that, " any words written or spoken of a woman which may amount to a charge of incontinency, shall be actionable." Similar words are used in the act making the malicious attempt to ruin the reputa-

tion of a virtuous woman, "by words written or spoken, which amount to a charge of incontinency," a misdemeanor, punishable by fine or imprisonment. The same language used in both statutes must bear the same interpretation, and the meaning of the expression, "a charge of incontinency," as defined in adjudications upon the former, be understood in the same sense in the latter.

Those adjudications leave no doubt of the construction of the word "incontinency," and that nothing short of an illicit intercourse with the other sex will fulfill the conditions required to constitute the criminal offence.

In *Watts* v. *Greenlee*, 2 Dev., 87, the second count in the declaration averred the slander to consist in the utterance of the words, "she is incontinent;" and HENDERSON, C. J., says that the word incontinent "cannot be understood, when generally applied to a female, to mean anything else but that she is *unchaste.*"

In *McBrayer* v. *Hill*, 4 Ired., 136, RUFFIN, C. J., says: "The statute of 1808 gives to a woman an action for words which amount to a charge of incontinency, which imports, we think, not merely the *imputation of impure desires, or a lascivious disposition, but the criminal fact of adultery or fornication.*"

A still more distinct definition of the import of the words is given in *Lucas* v. *Nichols*, 7 Jones, 32, by MANLY, J., who says: "Incontinency means want of restraint in regard to sexual indulgence, and imports, according to our statute, *definitive illicit sexual intercourse.*"

The principle of interpretation thus announced is recognized in *State* v. *Aldridge*, 86 N. C., 680, though not in as explicit language.

The charge in the present indictment is, that the woman promised to surrender her person to the accused for the gratification of his sexual propensities—not that she did so

in fact; and this, however injurious to her good name, is not within the provisions of the statute.

There is error in the refusal of the motion, and the judgment must be arrested.

Error.