The defendant is charged, under section 1113 of The Code, with attempting, in a wanton and malicious manner, to destroy the reputation of one Sue C. Smith, an innocent woman, by the speaking of the words set out in the indictment and imputing incontinency, he well knowing them to be false when so uttered. Upon his arraignment and plea of not guilty he was tried and convicted before the jury, and from the judgment rendered thereon appealed to this Court.
The prosecutrix, introduced by the State, testified that neither had the defendant nor any other man ever had sexual connection with her, though, having known him all her life, she had entered into a contract of marriage with him in 1886, since which he had once, when they were riding out, put his arms around her waist, and she had kissed him when bidding him good-bye the night before he started for Georgia, and that, excepting himself, no one else had taken liberties with her.
After proving the good character of the witness and the speaking the defamatory words charged, the solicitor rested.
The defendant, for himself, swore that their engagement and his promise to marry the prosecutrix was upon the condition that she became pregnant from her intercourse with him, which had taken place on four several occasions, but had never been "complete."
(521) Upon cross-examination he stated that, when testifying upon the subject in a court of a justice of the peace, he had said that the prosecutrix was the more willing of the two to the connection, and did not then say it had not been consummated; and further, that when the certificate of the two physicians who had personally examined her, that there were no indications of a loss of virtue, was read he pronounced it a forgery.
Thomas Jones, a witness for the defendant, swore to his having taken liberties with her and of his once attempting to have sexual commerce; and upon cross-examination that, in giving in testimony to the justice of the peace he had sworn to such illicit commerce as a fact which had taken place at different times, and not to an attempt which had failed, and this after hearing read the certificate of the physicians. *Page 407 
Resuming, the State introduced D. Vann who, having testified to the good character of the prosecutrix, was asked by defendant's counsel if he had not heard that his son Cam had had sexual intercourse with her, to which inquiry the witness responded that he had heard such a report through the defendant and Thomas Jones.
On redirect examination he was asked, without objection, if the witness had ever heard his son say anything about it, and he replied that he had received a letter from his son, then in Georgia, in which he announced the report false.
One counsel, a witness of defendant's, in answer to an inquiry from the solicitor, had testified to the general character of the prosecutrix as being good, and being re-examined for the defendant was asked by his counsel if he had not heard Harry Gillespie say he had himself had sexual intercourse with the prosecutrix. Thereupon the solicitor said to the court that no objection would be taken to the inquiry if the State would be allowed to show that Gillespie, at that time in Texas, had denied the charge. To this defendant's counsel remarked they would object, and the judge asked them if they thought "that (522) would be fair." Then the witness said he had heard Gillespie say that he had, four or five years ago, attempted to bring about such connection. Afterwards, before the testimony was concluded, defendant's counsel withdrew objection to the evidence, and the State introduced a letter from Gillespie denying that he had ever made such attempt or had ever told any one that he had made it.
R. P. Allen, having testified to the good repute of the witness Jones, was asked by the solicitor if he had allowed Jones to visit his family, and having answered in the affirmative, was asked by the judge if he would now allow him to visit his (witness's) family, to which he gave a similar affirmative answer.
The two examining physicians testified to the making two examinations of the person of the prosecutrix, a second being in consequence of a doubt expressed as to her identity, and in both found all the signs of a preserved virtue.
These instructions were requested by defendant's counsel to be given to the jury, which we give without needless verbiage:
1. An essential element in the offense is the possession by the prosecutrix of an unsullied character and of personal purity, both of which must be proved by the State beyond a reasonable doubt.
2. That by an innocent woman the statute means a virtuous woman, a pure woman, one whose reputation is without spot or blemish, and this the State must establish beyond a reasonable doubt.
3. That upon passing upon her innocence it is not requisite that the woman should commit a criminal act of sexual intercourse, but it is *Page 408 
sufficient if, from the evidence, the jury find such acts of indulgence in sexual propensities and a willingness to submit to the embraces of a man, short of actual connection, which are inconsistent with (523) innocence and purity, and that if she attempted to have such connection and it was ineffectual, not because of repugnance, but of some physical defect in her person, she is not an innocent woman in contemplation of the statute.
These instructions were refused, and instead of them the court charged the jury thus, in substance:
An innocent woman, as meant by the statute, is one who has never had illicit sexual intercourse with a man. If the jury are satisfied beyond a reasonable doubt that the prosecutrix was an innocent woman, and that the defendant, with intent to cause it to be believed that she was incontinent, impure, and thereby destroy her reputation, uttered the words charged in the indictment, and did so wantonly and maliciously — that is, with a bad, wicked intent and regardless of any injury or wrong which might be done to her, he is guilty and it is your duty so to find; otherwise, to acquit the accused.
In arriving at the intent the jury may consider the time, place, and circumstances and the number of times the words were repeated.
The court then inquired of defendant's counsel if there was anything further which they wished to be said to the jury, and they replied nothing.
After verdict a new trial was asked, because:
1. Of the inquiries made by the court of the witness Allen.
2. Of the remarks of the judge in regard to the declaration of Gillespie; and lastly,
3. Of the refusal to give the instructions asked and of those given instead.
The court declined to disturb the verdict, and from the judgment, as already stated, the appeal brings up the case for review.
1. The question put to the witness Allen, as to his permitting the witness Jones to visit in his family, after his voluntary disclosure of his own immoral conduct, is put to ascertain his estimate of a goodcharacter and its value as evidence to the jury, and for this, its obvious purpose, we see no just objection.
2. The exception to the inquiry of the judge, addressed to counsel of defendant, if it would be fair to permit a declaration of an absent person *Page 409 
imputing criminality to the prosecutrix to be given in, and refuse to hear his subsequent denial of the truth of the charge, was but an expression of a wish and purpose to have a fair trial, the natural impulse of an impartial and just judge conducting the trial. It is argued here as an indication of an opinion upon the merits of the controversy forbidden by the Act of 1796, The Code, sec. 413. It does not appear to us susceptible of any such interpretation, and at most as but an intimation to counsel that such a course, if pursued, would not be sustained in the ruling upon the matter. The judge presides at the trial and must see that it is fairly conducted and in accordance with the established practice; and if a suggestion, incidentally made to counsel during its progress, is to be allowed as ground for reversing a jury verdict because heard by them, it would greatly impair the efficiency of the courts in administering the law, and cripple the exercise of the functions that belong to the judicial office itself. The manner of conducting the examination of witnesses on a trial is left largely to the discretion of the presiding judge, and if not entirely approved, can but seldom be the subject of appellate revision.Bost v. Bost, 87 N.C. 477; Perry v. Jackson, 88 N.C. 103; Malloy v.Bruden, 86 N.C. 251.
But aside from these considerations it is a sufficient answer to the objection that it was not made until after the rendition of the verdict, and repeated adjudications have settled the rule that such must be taken in apt time and not after a disappointing issue of the (525) trial.
Of the instructions asked and refused as well as those given, it is only necessary to refer to the cases of S. v. Davis, 92 N.C. 764, and S. v.Moody, 98 N.C. 671, in the first of which it is decided that an innocentwoman is one who has never had unlawful sexual commerce with any man, and in the other that incontinency has the same meaning. These cases cover the whole charge and sustain it fully.
There is no error. Affirmed.
Cited: S. v. Hinson, 103 N.C. 378; S. v. Grigg, 104 N.C. 885;Osborne v. Wilkes, 108 N.C. 665; Posey v. Patton, 109 N.C. 458; S. v.Malloy, 115 N.C. 739; S. v. Hewlin, 128 N.C. 572; S. v. Harwell, 129 N.C. 554; S. v. Harrison, 145 N.C. 414; S. v. Lance, 149 N.C. 555; S.v. Hart, 186 N.C. 601. *Page 410