STATE v. W. H. BROWN.

*Evidence—Remarks of the Judge—*§ 413 *of The Code—Exam-*
*ination of Witnesses; Judge's discretion as to—Objection to*
*be made in apt time—*§ 1113 *of The Code; "Innocent Wo-*
*man," "Incontinency," defined.*

1. On the trial of an indictment, a witness, A, having testified to the good
character of another witness, J, in answer to a question by the Solic-
itor, said, that he had allowed J to visit his family, and, in answer
to a question by the Judge, said he still allowed such visits from
J; *Held,* that the effect of the questions, put by the Solicitor and
Judge, was simply to ascertain A's estimate of a *good charac-*
*ter,* and its value as evidence to the jury, and permitting the ques-
tions was not error.

2. On an indictment for slandering an innocent woman, a witness for
defendant, in answer to question by the Solicitor, said, prosecu-
trix's character was good.  The defendant's counsel asked him if
he had not heard one G say that he had had sexual intercourse
with prosecutrix?  Thereupon the Solicitor said to the Court, that
he would not object to the inquiry, if he would be allowed to
prove that G, who was then in Texas, had denied making such
statement.  Defendant's counsel said he would object to such
proof.  The Judge then asked defendant's counsel, in the hearing
of the jury, if he thought "that would be fair?"  *Held,* that the
remark of the Judge was no violation of § 413 of *The Code.*

3. The manner of conducting the examination of witnesses is left largely
to the discretion of the Judge, and can but seldom be the subject
of review, even when not entirely approved by this Court.

4. An objection to remarks made by the Judge, during the trial, must be
in apt time.  Such an objection made after verdict, is not in apt
time.

5. The definitions of "innocent woman," and "incontinency," contained
in *State* v. *Davis,* 92 N. C., 764, and *State* v. *Moody,* 98 N. C., 671,
construing § 1113 of *The Code,* approved.

6. On the trial of an indictment under § 1113 of *The Code,* the following
special instruction was asked by the defendant, and refused by
the Judge: That in passing upon her innocence, it is not requisite

that the woman should commit a criminal act of sexual inter-
course, but it is sufficient if the jury find such acts of indulgence
in sexual propensities and a willingness to submit to the embraces
of a man, short of actual connection, which are inconsistent with
innocence and purity; and that if she attempted to have such
connection and it was ineffectual, not because of her repugnance,
but of some physical defect in her person, she is not an innocent
woman in contemplation of the statute; *Held*, that the refusal to
give the instruction was proper.

Indictment, for slandering an innocent woman, under
§ 1113 of *The Code*, tried before *Connor, J.*, and a jury, at
Fall Term, 1887, of Bladen Superior Court.

The defendant is charged, under § 1113 of *The Code*, with
attempting, in a wanton and malicious manner, to destroy
the reputation of one Sue C. Smith, an innocent woman, by
the speaking of the words set out in the indictment and im-
puting incontinency, he well knowing them to be false when
so uttered. Upon his arraignment and plea of not guilty,
he was tried and convicted before the jury, and, from the
judgment rendered thereon, appealed to this Court.

The prosecutrix, introduced by the State, testified, that
neither had the defendant nor any other man ever had sexual
connection with her, though, having known him all her life;
she had entered into a contract of marriage with him in 1886,
since which he had once, when they were riding out, put his
arms around her waist, and she had kissed him, when bid-
ding him good-bye, the night before he started for Georgia,
and that, excepting himself, no one else had taken liberties
with her.

After proving the good character of the witness, and the
speaking the defamatory words charged, the Solicitor rested.

The defendant, for himself, swore, that their engagement,
and his promise to marry the prosecutrix, was upon the con-
dition that she became pregnant from her intercourse with
him, which had taken place on four several occasions, but
had never been " complete."

Upon cross-examination he stated that, when testifying upon the subject in a court of a Justice of the Peace, he had said that the prosecutrix was the more willing of the two to the connection, and did not then say, it had not been consummated; and further, that when the certificate of the two physicians, who had personally examined her, that there were no indications of a loss of virtue, was read, he pronounced it a forgery.

Thomas Jones, a witness for the defendant, swore to his having taken liberties with her, and of his once attempting to have sexual commerce; and, upon cross-examination, that, in giving in testimony to the Justice of the Peace, he had sworn to such illicit commerce as a fact which had taken place at different times, and not to an attempt which had failed, and this after hearing read the certificate of the physicians.

Resuming, the State introduced D. Vann, who, having testified to the good character of the prosecutrix, was asked by defendant's counsel, if he had not heard that his son Cam had had sexual intercourse with her, to which inquiry the witness responded, that he had heard such a report through the defendant and Thomas Jones.

On re-direct examination, he was asked, without objection, if the witness had ever heard his son say anything about it, and he replied that he had received a letter from his son, then in Georgia, in which he announced the report false.

One Counsel, a witness of defendant's, in answer to an inquiry from the Solicitor, had testified to the general character of the prosecutrix as being good; and, being re-examined for the defendant, was asked by his counsel, if he had not heard Harry Gillespie say he had himself had sexual intercourse with the prosecutrix. Thereupon, the Solicitor said to the Court, that no objection would be taken to the inquiry, if the State would be allowed to show that Gillespie, at that time in Texas, had denied the charge. To this, defen-

dant's counsel remarked, they would object; and the Judge asked them, if they thought " that would be fair?"    Then the witness said, he had heard Gillespie say that he had, four or five years ago, attempted to bring about such connection.    Afterwards, before the testimony was concluded, defendant's counsel withdrew objection to the evidence, and the State introduced a letter from Gillespie, denying that he had ever made such attempt, or had ever told any one that he had made it.

R. P. Allen, having testified to the good repute of the witness Jones, was asked by the Solicitor, if he had allowed Jones to visit his family, and having answered in the affirmative, was asked by the Judge, if he would now allow him to visit his, witness' family, to which he gave a similar affirmative answer.

The two examining physicians testified to the making two examinations of the person of the prosecutrix, a second being in consequence of a doubt expressed as to her identity, and, in both, found all the signs of a preserved virtue.

These instructions were requested by defendant's counsel to be given to the jury, which we give without needless verbiage:

1. An essential element in the offence is the possession by the prosecutrix of an unsullied character and of personal purity, both of which must be proved by the State beyond a reasonable doubt.

2. That, by an innocent woman, the statute means a virtuous woman, a pure woman, one whose reputation is without spot or blemish, and this the State must establish beyond a reasonable doubt.

3. That, upon passing upon her innocence, it is not requisite that the woman should commit a criminal act of sexual intercourse, but it is sufficient if, from the evidence, the jury find such acts of indulgence of sexual propensities, and a willingness to submit to the embraces of a man, short of

actual connection, which are inconsistent with innocence and purity, and that if she attempted to have such connection and it was ineffectual, not because of her repugnance, but of some physical defect in her person, she is not an innocent woman in contemplation of the statute.

These instructions were refused, and instead of them, the Court charged the jury thus, in substance:

An innocent woman, as meant by the statute, is one who has never had illicit sexual intercourse with a man. If the jury are satisfied beyond a reasonable doubt that the prosecutrix was an innocent woman, and that the defendant, with intent to cause it to be believed that she was incontinent, impure, and thereby destroy her reputation, uttered the words charged in the indictment, and did so wontonly and maliciously, that is, with a bad, wicked intent, and regardless of any injury or wrong which might be done to her, he is guilty, and it is your duty so to find; otherwise, to acquit the accused.

In arriving at the intent, the jury may consider the time, place, and circumstances, and the number of times the words were repeated.

The Court then inquired of defendant's counsel, if there was anything further which they wished to be said to the jury, and they replied nothing.

After verdict, a new trial was asked, because:

1. Of the inquiries made by the Court of the witness Allen.

2. Of the remarks of the Judge in regard to the declaration of Gillespie; and lastly,

3. Of the refusal to give the instructions asked, and of those given instead.

The Court declined to disturb the verdict, and from the judgment, as already stated, the appeal brings up the case for review.

*Attorney General*, for the State.
*Mr. T. M. Womack*, for the defendant.

SMITH, C. J. (After stating the facts). 1. The question put to the witness, Allen, as to his permitting the witness Jones to visit in his family, after his voluntary disclosure of his own immoral conduct, is put to ascertain his estimate of a *good character*, and its value as evidence to the jury, and for this, its obvious purpose, we see no just objection.

2. The exception to the inquiry of the Judge, addressed to counsel of defendant, if it would be fair to permit a declaration of an absent person, imputing criminality to the prosecutrix, to be given in, and refuse to hear his subsequent denial of the truth of the charge, was but an expression of a wish and purpose to have a fair trial, the natural impulse of an impartial and just Judge conducting the trial. It is argued here as an indication of an opinion upon the merits of the controversy forbidden by the Act of 1796, *The Code*, § 413. It does not appear to us susceptible of any such interpretation, and at most, as but an intimation to counsel that such a course, if pursued, would not be sustained in the ruling upon the matter. The Judge presides at the trial and must see that it is fairly conducted, and in accordance with the established practice; and if a suggestion, incidentally made to counsel during its progress, is to be allowed as ground for reversing a jury verdict, because heard by them, it would greatly impair the efficiency of the Courts in administering the law, and cripple the exercise of the functions that belong to the judicial office itself. The manner of conducting the examination of witnesses on a trial is left largely to the discretion of the presiding Judge, and if not entirely approved, can but seldom be the subject of appellate revision. *Bost* v. *Bost,* 87 N. C., 477; *Perry* v. *Jackson,* 88 N. C., 103; *Malloy* v. *Bruden,* 86 N. C., 251.

. But, aside from these considerations, it is a sufficient answer to the objection, that it was not made until after the rendition of the verdict, and repeated adjudications have

settled the rule that such must be taken in apt time and not after a disappointing issue of the trial.

Of the instructions asked and refused as well as those given, it is only necessary to refer to the cases of *State* v. *Davis*, 92 N. C., 764, and *State* v. *Moody*, 98 N. C. 671; in the first of which it is decided, that an *innocent woman* is one who has never had unlawful sexual commerce with any man, and in the other, that incontinency has the same meaning. These cases cover the whole charge and sustain it fully.

There is no error.

Affirmed.