[No. 11133. Department Two.—September 23, 1886.]

## IN THE MATTER OF THE ESTATE OF JOHN BALDWIN, AN INSOLVENT.

INSOLVENCY—PROPERTY EXEMPT FROM EXECUTION—THRASHING MACHINERY—FARMER.—An expensive thrashing outfit, consisting of a thrashing-engine, water-tanks, a thrasher, a derrick and forks, a seed-cleaner, a feeding-machine, a feeding-rack, and a cook-house, which is owned in common by several farmers, and used by them to a limited extent on their own lands, but principally in doing work for others for hire, is not exempt from execution under subdivision 3 of section 690 of the Code of Civil Procedure, and upon the insolvency of one of the co-owners, his interest therein cannot be set apart for his use and benefit.

ID.—SEVERAL IMPLEMENTS OF SAME CHARACTER CANNOT BE SET APART.—An insolvent farmer, for whose benefit a particular implement of husbandry has been set aside as exempt from execution, cannot have another implement of the same general character, although operated in a different manner, set aside for his benefit, unless it appears that the former implement is insufficient for his purposes.

ID.—APPLICATION TO SET APART—CREDITORS MAY OPPOSE WITHOUT FILING WRITTEN OBJECTIONS.—On an application by an insolvent debtor to have certain property set aside to him as exempt from execution, the creditors may appear and object to the property being set aside, without filing any paper setting forth their objections.

APPEAL from an order of the Superior Court of San Joaquin County refusing to set apart certain property for the benefit of an insolvent debtor.

The facts are stated in the opinion.

*J. B. Webster*, and *L. M. Elliott*, for Appellant.

*F. T. Baldwin*, *Ansel Smith*, and *J. C. Campbell*, for Respondents.

Belcher, C. C.—John Baldwin was a farmer, and was adjudged an insolvent debtor, under the provisions of the Insolvent Act of 1880. After the order adjudging him an insolvent was entered, he petitioned the court to set aside to him certain personal property as exempt from execution, and among other things, a Cahoon seed-sower, and a "thrashing rig," consisting of a thrashing-engine, three tanks to hold water for the engine, a thrasher, a derrick and forks, a seed-cleaner, a feeding-machine, a feeding-rack, and a cook-house.

S. P. Bailey, one of the creditors of the petitioner, filed a paper objecting to the property being set aside on the ground that it was not by law exempt from execution.

The petitioner moved that the paper be stricken out on the ground that it was not verified, and no copy of it was served on him or his attorney. The court denied the motion, and an exception was reserved to the ruling.

The matter was then heard, and from the evidence introduced, it appeared that Baldwin owned and farmed two hundred acres of land in San Joaquin County, and that he rented other lands, and usually cultivated about 320 acres in grain annually. He owned the Cahoon seed-sower, which was worth ten dollars, and another seed-sower, which was set apart to him, worth ninety dollars. The two seed-sowers were used for sowing grain broadcast, but were operated in a different manner. He and his son, who was also a farmer, owned jointly the thrashing rig. The engine was used to furnish motive-power for the thrasher, and it required sixteen men and six horses in addition to the steam-power to operate it. The thrashing rig was used to thrash the grain of its owners, but it was used principally for the purpose of thrashing grain for others.

It was also shown that the implements above described were all necessary implements to enable a farmer to profitably carry on the business of farming, and to harvest and prepare his crops for market; that it was of

great advantage to a farmer to own and control implements for thrashing, in whole or in part, for the reason that the grain, while in stack waiting to be thrashed for hire by thrashing implements of others, was liable to be injured by fire, early rains, shelling out, etc.; that it was not an unusual thing for several farmers to purchase, and use in common, thrashers, engines, derricks, and forks, feeding-machines, cleaners, headers, mowers, seed-sowers, plows, and other implements, for the reason that the size of their own farms, and the amount of their capital would not warrant the investment by each individual farmer in the whole of such implements; that only about one farmer in forty or fifty owned a thrashing rig, and only farmers owning tracts of land several thousand acres in extent could afford to have a complete thrashing outfit; and that most of the thrashing was hired done, and the men generally who owned thrashing outfits operated them for profit outside the regular business of farming.

The petitioner offered to prove that by reason of his land being principally river-bottom land, his grain largely grew up with sun-flowers, and hence he could not raise grain, and make a living, if compelled to hire it thrashed at current prices for thrashing; therefore he was compelled to own and control an interest in a thrasher so as to be enabled to entirely harvest his own grain.

The creditors and assignee objected to this evidence as irrelevant and immaterial, and the objection was sustained, the petitioner reserving an exception.

After hearing the evidence, the court refused to set aside as exempt any of the implements above mentioned, but ordered them turned over to the assignee; and the appeal is from that order.

Section 60 of the Insolvent Act of 1880 makes it the duty of the court having jurisdiction of the proceedings to exempt and set apart for the use and benefit of the

insolvent such real and personal property as is by law exempt from execution.

Subdivision 3 of section 690 of the Code of Civil Procedure exempts from execution "the farming utensils, or implements of husbandry of the judgment debtor; also two oxen, or two horses, or two mules, and their harness, one cart, or wagon, and food for such oxen, horses, or mules for one month."

The principal question presented for decision is: Does the code exempt from execution an expensive thrashing outfit, which is owned by two or more farmers in common, and is used by them to a limited extent on their own lands, but is used principally in doing work for others for hire?

In *Brewer's Lessee* v. *Blougher*, 14 Pet. 178, it is said on page 198: "It is undoubtedly the duty of the court to ascertain the meaning of the legislature from the words used in the statute, and the subject-matter to which it relates; and to restrain its operation within narrower limits than its words import, if the court are satisfied that the literal meaning of its language would extend to cases which the legislature never designed to embrace in it."

It should be observed that the subdivision above quoted does not by any express words limit the exemption provided for to judgment debtors who are farmers, nor say that to be exempt the oxen, horses, or mules must be *work* oxen, horses, or mules; and yet it has been held by this court that the language used must be so construed as to make the exemption applicable only to such judgment debtors as are engaged in the business of farming, and only to such oxen, horses, or mules as are suitable and intended for the ordinary work conducted on a farm. (*Brusie* v. *Griffith*, 34 Cal. 302; *Roberts* v. *Adams*, 38 Cal. 383.)

In the case last cited, after reviewing the different provisions of the sections, providing for exemptions, in the

old Practice Act (section 219), the court said: "From this summary of the act it is entirely plain that its purpose was to secure to the judgment debtor the means to prosecute his vocation, and thus earn a support for himself and family. In securing to a farmer two oxen, horses, or mules, with their harness, a wagon or cart, his farming implements and his seed, grain, or vegetables for planting, the legislature intended, by this exemption, to enable him to prosecute his business of farming in the ordinary sense of that term; and the oxen, horses, or mules which are reserved to him must be such as are suitable and intended for that use."

In our opinion the legislature meant by the words, "the farming utensils or implements of husbandry of the judgment debtor," such utensils or implements as are needed and used by the farmer in conducting his own farming operations; and it was not intended that all farming machinery which a farmer may own should be exempt, because, while he uses it chiefly by renting it out, or in doing work on others' farms for hire, he still uses it to a small extent on his own land.

To hold otherwise would enable the farmer, who cultivates forty acres, to invest a large amount of money in expensive implements, and to hold them free and clear of his creditors, though they were used but for a day on his own land, and for all the balance of the year were rented or hired out to others.

A reasonable construction should be given to the statute, and not one which would pervert its benevolent design, and enable gross frauds to be perpetrated under color of law.

In support of their claim that the property should have been set aside, counsel for appellant cite *McCue* v. *Tunstead*, 65 Cal. 506. In that case the plaintiff owned and cultivated in grain, etc., a farm of 150 acres. He also owned a stallion which he used as a work-horse on the farm and in serving mares which were brought to the

farm and agisted thereon.   In summing up the case this court said:—

"On the question of the value and gender of the horses used in husbandry, the code is silent.   It is restrictive as to the number and use only.   If the plaintiff is engaged in husbandry, he is entitled to the exemption of two horses, if the same be used by him in such husbandry, the value and gender of which are immaterial.

"The findings of the court, in our opinion, establish two propositions: 1. That plaintiff is a farmer; and 2. That the horse which he claims as exempt, was one of two which he used on his farm, in the cultivation and tillage thereof."

It was accordingly held that the horse was exempt, and the judgment of the court below, holding otherwise, was reversed.

We do not think that case a controlling authority in this case.   The result reached might have been different if it had appeared that the stallion, though sometimes used to do work on the farm, had been principally used to stand for mares in other places.

As to the Cahoon seed-sower, it was worth but ten dollars, and the petitioner had another seed-sower which was worth ninety dollars, and was set aside to him, both being used for the same purposes, though operated in a different manner.   The cheaper implement may have been useful to the petitioner, but as it did not appear that the one set aside was not sufficient for all his purposes, we cannot see any such violation of duty on the part of the court below in refusing to set it aside as should lead to a reversal of the order.

There was no error in refusing to strike out the paper filed by Bailey.   It was not necessary that it be verified or served on the petitioner or his attorneys.   The creditors had the right to appear and object to the property being set aside, without filing any paper setting forth their objections.

So we can see no material error in the ruling of the court excluding certain evidence offered by the petitioner. If admitted, it could not have changed or affected the result.

On the whole we think the order appealed from should be affirmed.

SEARLS, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the order is affirmed.