152 So. 315

**KAY v. FURLOW.**

**In re FURLOW.**

No. 32544.

Oct. 30, 1933.

Rehearing Denied Jan. 2, 1934.

Charles F. Fletchinger, of New Orleans, for relator.

Rittenberg & Rittenberg, of New Orleans, for respondent.

OVERTON, Justice.

In 1931, defendant, who is a practicing attorney in New Orleans, being in need of mon-

ey, granted a chattel mortgage on his law library and office furniture, by notarial act, for the sum of $550, this sum being represented by five promissory notes, made by him, each for the sum of $110, and containing clauses as to 8 per cent. interest and 10 per cent. attorney's fees. One note is made payable each month, and all were made payable to defendant's order, and were by him indorsed in blank.

Defendant defaulted in the payment of the notes, and plaintiff, who is the holder of the notes, caused executory process to issue on the mortgage, under which defendant's law library and office furniture were seized to satisfy the mortgage indebtedness. Defendant applied to the civil district court for the parish of Orleans for a writ of injunction to prevent the sale of the mortgaged property. The basis of the application is that defendant, being a practicing lawyer, his law library and office furniture, which are necessary to enable him, as a lawyer, to earn a living, are exempt from seizure under article 644 of the Code of Practice, even in the foreclosure of a special mortgage, granted on them, the mortgage not containing any express waiver of the exemption. The judge, after hearing the rule nisi, refused the demand for a preliminary injunction. Hence, this application for writs.

Article 644 of the Code of Practice, which governs here, just prior to its amendment and re-enactment by Act No. 183 of 1932, reads, so far as pertinent, as follows, to wit: "The Sheriff or constable cannot seize the linen and clothes belonging to the debtor or his wife, nor his bed, bedding or bedstead, nor those of his family, nor his arms and military accoutrements, nor the tools and instruments and books and sewing machines, necessary for the exercise of his or her calling, trade or profession by which he or she makes a living. * * * "

This article appears in the Code of Practice, in the section thereof, treating of the writ of fieri facias. This writ does not issue in proceedings by executory process, but in the execution of judgments for money, and directs the sheriff to seize sufficient of the property of the debtor, which he may find in the parish, to satisfy the writ. The Code of Practice, in article 643 thereof, directs the sheriff what to do with the writ, ordering him to seize "the property of the debtor which he shall find in his parish, except such things as are mentioned in the following article [meaning art. 644]," and then follows the enumeration of exempt articles, found in article 644, quoted, in part, above.

The fact that the Code specifically directs the sheriff to seize the property of the debtor, lying in the parish, except the property enumerated in article 644, and the fact that the purpose of the writ of fieri facias is to seize the property of the debtor generally in the execution of a moneyed judgment, suggests that the exemption is intended to apply only to ordinary debts and, perhaps, to debts, secured by general liens, imposed by law.

▮ It may be said that no restriction whatever is found in article 644 of the Code of Practice, or elsewhere, on the right of the debtor to waive the exemption. The law has left him free to waive it or not as he sees proper. Corpus Juris, with reference to such exemptions, says: "A debtor may not only sell and convey his exempt property absolutely but in the absence of express restrictions

may mortgage or pledge it, and when he does he thereby impliedly waives his right of exemption as to the particular property against the mortgage or pledge." 25 C. J. p. 107, § 185.

Again the same work says: "An express waiver of exemption is not necessary in case of a mortgage or pledge of exempt property. A mortgage or pledge implies a waiver as to the particular property. Even though the statute exempts property from 'forced sale under any process of law' the mortgagor or pledgor of exempt property cannot claim it as exempt as against proceedings to enforce the mortgage or pledge." 25 C. J. p. 114, § 196.

Ruling Case Law tersely states the law, as follows: "In the absence of a prohibitory statute a mortgage or pledge of exempt property is valid and the execution of such an instrument constitutes a waiver of the exemption as to the debt secured." 11 Ruling Case Law, § 61, p. 544.

In Kyle v. Sigur, 121 La. 888, 46 So. 910, a case was presented in which the defendant pledged his law books. When sued on the pledge he raised the issue that the property could not be seized as it was exempt under article 644 of the Code of Practice, under Act No. 17 of 1874, and under Act No. 79 of 1876, these acts being merely re-enactments of article 644 of the Code, and under the enactment of a criminal clause, not reproduced in the present compilations of the Code. The court, after quoting the criminal clause, which makes it a misdemeanor for a sheriff or constable to violate these acts or for any one to induce by artifice or subterfuge another to sign away his rights under the acts, said: "To say that the things exempted from seizure by this law cannot be seized when they have been pledged is to say that they cannot be pledged; for a pledge which could not be made effective by foreclosure would be no pledge. Now, we do not think this law was ever intended to deprive the owner of these exempted things of his right to pledge them. The right to pledge property is one of the valuable attributes of its ownership. No one would think of saying that the owner of these exempted things could not sell them. If so, he ought to be allowed to pledge them, since pledge is nothing more than a qualified alienation of the thing. The effect is not so much to impose an additional obligation upon the debtor, as it is to bind the thing itself for the payment of the debt. * * * If the owner can pledge, and yet the pledgee cannot foreclose the pledge, then the thing pledged must remain indefinitely in limbo. We do not think this statute was ever intended to put property out of commerce in that manner, or to deprive an owner of his right to pledge his property. * * *"

■ There is no such difference between a chattel mortgage and a pledge that would render the foregoing case inappropriate here. In our opinion it is directly pertinent, and, in connection with the remaining authorities cited, settles the question that one may mortgage or pledge, in the absence of legislative restrictions, there being none, the property enumerated in article 644 of the Code of Practice as exempt property.

■ Defendant, however, takes the position that, while, perhaps, there are no express legislative restrictions on the right to mortgage such property, nevertheless, that the granting of a mortgage on it is contrary to

public policy, and therefore is ineffective and not enforceable. In the case of Kyle v. Sigur, cited supra, the question of public policy was directly raised, the case relating to a foreclosure of a pledge on a law library, and it was there held that such a foreclosure would not be contrary to such policy. The reasoning upon which that ruling rests appears from the excerpt from that case, quoted supra. The right to mortgage or pledge such property is too valuable a right to prohibit. It may well be of considerable advantage to the owner of such property to be able to mortgage or pledge it. It is not, in the sense of article 11 of the Civil Code, contrary to public order, good morals, or the rights of others, to use such property as security. It is frequently to the advantage of dependents so to use it. Allen, Nugent & Co. v. Carruth, 32 La. Ann. 444, 446.

The jurisprudence, under the more recent homestead laws, in force, throws but little light, if any, upon the subject here presented, for, in them, a specific waiver is demanded, which must be executed in a special manner. In the early cases, relative to homestead exemptions, when the laws provided for no specific waiver of the exemption, cases may be found supporting defendant's position that the mortgaging of the homestead was contrary to public policy and therefore not enforceable. These cases are Hardin v. Wolf & Cerf, 29 La.

Ann. 333, and Van Wickle v. Landry, 29 La. Ann. 330. Hardin v. Wolf & Cerf was expressly overruled in Allen, Nugent & Co. v. Carruth, 32 La. Ann. 444, where it was held that the homestead exemption could be waived in consenting to a special mortgage, and Van Wickle v. Landry was recognized as overruled in Denis v. Gayle, 40 La. Ann. 286, 292, 4 So. 3, 7, where it was said: "It is thus made manifest that the views expressed in the Van Wickle Case find no sanction in the fundamental principles of our laws, and an examination of all the subsequent decisions of this court on the statute now under discussion shows that they all fairly antagonize the spirit of that decision, which can be considered as practically overruled."

Defendant, in consenting to the mortgage, by necessary implication, waived his exemption, otherwise he would not have been granting a mortgage at all, but only a mere sham. The implied waiver, as appears from the authorities cited, is a valid waiver. The waiver, as we have seen, does not violate public policy.

The judgment, under review, is therefore affirmed at defendant's costs.

O'NIELL, C. J., dissents, being of the opinion that the case of Kyle v. Sigur should be distinguished by the fact that the pledge was a surrender of possession of the law books.