[Civ. No. 11291. First Appellate District, Division One.—May 31, 1940.]

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA (a Corporation), Plaintiff, v. LOUIS BECK et al., Defendants; EDWARD H. MARXEN, Administrator, etc., Respondent; EVELYN CORBETT et al., Appellants.

Benjamin P. Riskin and Al Mason for Appellants.

Stoner & Gardner for Respondent.

PETERS, P. J.—Evelyn Corbett and Albert A. Albeck appeal on the judgment roll from a judgment in favor of intervenor, Edward H. Marxen, administrator with the will annexed of the estate of Samuel Beck, deceased, determining that the proceeds of certain insurance policies on the life of Samuel Beck should be used to pay the debts and costs of administration of the Beck estate. It is appellants' contention that it should have been adjudged that the proceeds of such policies belonged to them.

The facts giving rise to this controversy are as follows: Two policies of life insurance were issued by The Prudential Insurance Company of America on the life of Samuel Beck, one on November 20, 1933, and the other on December 4, 1933, each in the sum of $1,000. Both policies named Louis Beck, the brother of the assured, as beneficiary. Approximately two years later, in the exercise of a right reserved to the insured under the terms of the policies, the insured changed the beneficiary, substituting for his brother, his executors, administrators or assigns. About two months thereafter, he assigned the policies, one to Evelyn Corbett and the other to Evelyn Corbett and Albert A. Albeck, these two to share equally in the proceeds of the latter policy. Six and a half months later Samuel Beck died.

Louis Beck, the beneficiary first named in the policies, and Evelyn Corbett and Albert A. Albeck, as subsequent assignees, made claim to the proceeds of the policies. The insurance company filed an action in interpleader naming Louis Beck, Evelyn Corbett and Albert A. Albeck as defendants, and, upon deposit of the proceeds of the policies with the court, was discharged from liability. Just prior to the trial, the administrator of the estate of Samuel Beck, deceased, who theretofore had filed an answer, filed a complaint in intervention, alleging that certain enumerated assets of the estate were of "practically no value except what may be recovered by the intervenor for said estate in this action"; that the time for filing claims against the estate had not elapsed; that specified claims in excess of the amount deposited with the clerk by the interpleader had been filed; that the change of bene-

ficiary, designating the executors, administrators or assigns, made the policies payable to the estate and not to the brother, Louis Beck; that the assignments to appellants were brought about by undue influence and deceit practiced upon decedent by the appellants at a time when he was mentally incompetent, representations having been made to him that Evelyn Corbett had advanced moneys for his use and benefit and that Albert A. Albeck had performed certain legal services for which he was entitled to compensation, to secure which compensation and repayment of advances, it was necessary that decedent make the aforesaid assignments; that such representations were untrue. The intervenor further alleged that the assignments were made without consideration and at a time when Samuel Beck was indebted to various parties, and that they were made with intent to hinder, delay and defraud these creditors by preventing the proceeds of the policies of insurance from being applied toward payment of legitimate claims against him; that appellants received the assignments with knowledge of Samuel Beck's insolvency and that their purpose was to assist him in defrauding his creditors.

By these pleadings two issues were presented to the trial court: first, whether Evelyn Corbett and Albert A. Albeck were guilty of fraud in the securing of the assignments. The trial court made no direct finding on this issue. Secondly, the trial court was called upon to decide whether Samuel Beck, the owner of the two policies, was guilty of making a fraudulent transfer in assigning the policies. The trial court found that because Beck was insolvent at the time of the assignments, and because the assignments were gratuitously made when he knew he was about to die, they were in fraud of creditors, and, therefore, void. It is from a judgment based on these findings and conclusions that this appeal is taken.

Appellants' first contention is that under section 690.19 of the Code of Civil Procedure the proceeds of the two policies were exempt from attachment or execution, and that as to such exempt property the owner thereof cannot be guilty of making a fraudulent conveyance. With this contention we agree.

Section 690.19 of the Code of Civil Procedure provides: "All moneys, benefits, privileges, or immunities, accruing or in any manner growing out of any life insurance, if the an-

nual premiums paid do not exceed five hundred dollars, or if they exceed that sum a like exemption shall exist which shall bear the same proportion to the moneys, benefits, privileges, and immunities so accruing or growing out of such insurance that said five hundred dollars bears to the whole annual premiums paid.''

The legal issue can be simply stated: Can a debtor, in possession of exempt property, ever be guilty of making a fraudulent conveyance or transfer of property made exempt by statute? Respondent in support of the judgment cites several cases which hold that an assignment of an insurance policy, being property, may be set aside if made in fraud of creditors. Most of the cases cited, however, did not involve insurance policies made exempt from attachment or execution by statute. (See notes 6 A. L. R. 1173, and 106 A. L. R. 596, validity and effect as against creditors of change of beneficiary or assignment of insurance policy from estate to individual.) It seems quite clear to us that, under basic and well settled principles, no transfer of property made entirely exempt by statute, can be held to be fraudulent as to creditors. In the absence of express statutory restrictions a debtor has absolute power over exempt property—he may not only sell, exchange or assign his exempt property for a consideration, but he may give it away, if he sees fit, not only to his wife and children, but to strangers. To hold otherwise would make the exemption laws operate to the detriment rather than to the benefit of the debtor. These principles, supported by authorities from many states, are set forth in 25 Corpus Juris, pages 106 and 107, sections 182 and 184.

It is urged by respondent, however, that these basic concepts have no application where the gift of the exempt property is made by the debtor while insolvent. The complete answer to this argument is that creditors have no rights and no interest of any kind in the exempt property of their debtors. The mere fact that a general fraudulent conveyance statute has been enacted does not change the rule. So far as exempt property is concerned there are no creditors within the meaning of such a statute. These principles are so well settled that citation of the many cases establishing them would unduly lengthen this opinion. The cases are collected in 24 Am. Jur. 259, sec. 109; 27 Cor. Jur. 438, 439, secs. 62 and 63. The mere fact that the assigning debtor has died in no way

changes the rule. According to the weight of authority, where exempt property is assigned or otherwise transferred "the transferee may retain it as against the claim of the transferor's creditors, notwithstanding the intent of the debtor was to place it beyond the reach of and to defraud his creditors". (25 Cor. Jur., p. 125, sec. 218, where many cases are cited to support the text.)

■ Section 690.19 of the Code of Civil Procedure exempts from execution or attachment *all* moneys, benefits, privileges or immunities, accruing or in any manner growing out of any life insurance, if the annual premiums paid do not exceed $500. That the purpose of the section is to protect the beneficiary as well as the insured is indicated by decisions that the insurance proceeds in the hands of the beneficiary, to the extent that the annual premiums have not exceeded $500, are exempt from execution for debts of the beneficiary. (*Holmes* v. *Marshall*, 145 Cal. 777 [79 Pac. 534, 104 Am. St. Rep. 86, 2 Ann. Cas. 88, 69 L. R. A. 67]; 12 Cal. Jur., p. 340.) The plain meaning of the unqualified language of section 690.19 is also to exempt such proceeds in the hands of the beneficiary from the debts of the *insured.*

If a conveyance or transfer is fraudulent it must be fraudulent when it is made. It can hardly be contended that at the time the assignments were made, or at any time during Samuel Beck's lifetime, the creditors could reach the interest of Beck in the policies. To so hold would be to completely abolish the exemption. His subsequent death could not create a cause of action that did not exist prior to his death.

There are apparently no cases directly in point in California dealing with property made exempt by the various subdivisions of section 690 of the Code of Civil Procedure. There are many cases, however, holding that "the doctrine bearing upon conveyances made to hinder, delay, and defraud creditors has no application to the creation of a homestead" and that "it has long been the rule that a gift, sale, or pledge of any part of a homestead cannot, under any circumstances, be with intent to defraud a creditor not having a lien upon the premises, *for a creditor is not entitled to complain of the transfer by the debtor of an asset which he could not have reached, had the debtor retained it*". (Italics ours.) (*Montgomery* v. *Bullock,* 11 Cal. (2d) 58, at p. 62 [77 Pac. (2d) 846], where many cases are cited.) These principles are de-

cisive of the present appeal. Had the debtor retained the policies, the creditors could not have reached them prior to his death. They cannot complain, therefore, of a transfer made prior to death, whether such transfer was made with or without consideration, or while solvent or insolvent.

There is nothing in section 660 of the Probate Code, cited by respondent, that in any way affects this case. That section provides that in probate, exempt property, in the discretion of the court, may be set aside to the widow and minor children. Section 690.19 of the Code of Civil Procedure contains no such limitations. Where a policy is payable to a named individual, its proceeds do not pass through the estate of the insured. In such event the provisions of section 690.19 compel, without limitation, the exemption from liability for the insured's debts and those of the beneficiary, of insurance benefits to the extent that the annual premiums do not exceed $500. The benefits of this section are not limited to the widow and children.

Respondent contends that it was not shown or found that the premiums on all policies on the life of Samuel Beck did not exceed $500 annually. The court did find, however, that the premiums on each of the policies herein were $4.32 a month. The appellants were not required to prove the absence of other insurance. Having proved that the premiums on their policies totaled less than $500 annually, they established a *prima facie* case.

There is nothing in the case of *Bryson* v. *Manhart,* 11 Cal. App. (2d) 691 [54 Pac. (2d) 778], so heavily relied upon by respondent, contrary to the views herein expressed. In that case $200,000 of insurance purchased by the insured with embezzled funds was payable to his estate. Thereafter, while insolvent, the insured named his sister as beneficiary. After his death it was held that the administrator of the insured's estate could reach the proceeds for the benefit of the person from whom the moneys had been embezzled, and that the naming of the sister was, in effect, a fraudulent conveyance or transfer of assets. The court referred to a number of decisions in support of its conclusion that where insurance is payable to the estate of the debtor and he changes the beneficiary while insolvent, his creditors in the event of his death insolvent may reach the proceeds of the policies. The only unpaid creditor was the aunt of the decedent from whom

the money had been embezzled. The case is not in point for two reasons. In the first place, there is no reference at all in the opinion to section 690.19 of the Code of Civil Procedure. The question of whether any portion of the proceeds of the policies was exempt was not mentioned or discussed. In the second place, the court emphasized that the defrauded person could trace the embezzled funds into the insurance policies. At page 696 the court stated: "Plaintiff is entitled to pursue the property fraudulently transferred and to force an accounting thereof from defendants."

For the foregoing reasons the judgment appealed from is reversed.

Knight, J., concurred.

WARD, J., Dissenting.—I dissent.

The facts are briefly but fairly stated in the majority opinion. Any additional facts will be hereinafter set forth. On the trial of the case two issues were presented, namely, did the assured make an assignment of his life insurance policies with the intention of defrauding his creditors, and assuming proof of such purpose, may an exemption (Code Civ. Proc., sec. 690.19), arising from such fraud, be claimed? The court found that the assignments were made when the assignor was insolvent and were "made with the intention to hinder, delay and defraud his creditors". No question of the sufficiency of the evidence to support such findings of fact is raised.

Appellants, relying entirely upon the exemption statute (Code Civ. Proc., sec. 690.19, *supra*), say in their opening brief: "Unless it can be said that the proceeds from life insurance with annual premiums of less than Five Hundred Dollars ($500.00) are not exempt from execution, the judgment of the trial court should be sustained, but if the contrary is true then the judgment cannot be sustained." However, in order to show that they should not reap the benefit of this exemption based upon fraud, it will be necessary from time to time to refer to the fraudulent assignments to them.

Appellants contend that "the benefit of the exemption statute is not confined to honest debtors and is not lost by dishonest conduct of the debtor in attempting to defeat his creditors".

It is held in the majority opinion that: "According to the weight of authority, where exempt property is assigned or otherwise transferred 'the transferee may retain it as against the claim of the transferor's creditors, notwithstanding the intent of the debtor was to place it beyond the reach of and to defraud his creditors'. (25 Cor. Jur., p. 125, sec. 218, where many cases are cited to support the text.)" An examination of these citations indicates that the decisions generally refer to homestead matters, and that when a debtor is permitted to defraud creditors, it is countenanced upon the broad theory that first consideration should be given the debtor's dependents so that they will not be thrown upon the government for support. Many of the cases enlarge this doctrine to include the debtor.

The underlying benevolent purpose of the provisions of Code of Civil Procedure section 690.19, *supra,* is found in Probate Code, section 660, wherein it is provided that the decedent's surviving spouse and minor children may, in the discretion of the court, have set apart to them all or any part of the property exempt from execution. In other exemption statutes, we find restrictive provisions as to the amounts exempt, with reference to wages, certain designated property, and in some instances for a specified period of time the use of livestock and mechanical materials, shares in homestead associations, stock in building and loan associations, money received as a pension, also life and health insurance benefits. (Code Civ. Proc., secs. 690–690.25.) These exemptions and the restrictions thereon are primarily for the benefit of debtors and their dependents, such as a wife or child, but not for strangers, and advantage thereof may not be taken by those who through fraud assist, even innocently, in hindering and delaying the rights of creditors.

The manifest purpose of the legislature in enacting exemption clauses respecting property ordinarily subject to execution would not be served if the benevolent design could be defeated through the perpetration of a fraud. (*Estate of Crosby,* 2 Cal. (2d) 470 [41 Pac. (2d) 928].) The exemption from the claims of creditors of the proceeds of a policy of life insurance is for the purpose of securing to the dependents of the assured upon the maturity of the policy some degree of maintenance and thus to fulfill to that extent the moral duty of protection and support which he owes to his

family. "All the statutes bearing on the exemption of life policies or their proceeds seem based on the theory that, in the absence of an expressed contrary intent, the object of an ordinary life insurance policy should be considered as the protection of insured's family after his death, and that this object and desire is laudable and in accordance with public policy. They provide, in substance, that the proceeds of life insurance policies taken out for the benefit of certain classes of beneficiaries shall be free from the claims of creditors; but in some states insurance in excess of certain specified amounts, or procured while the insured was insolvent, is declared not exempt." (7 Cooley's Briefs on Insurance, 2d ed., p. 6508.)

The courts, in an endeavor to protect the debtor and his dependents, have sought to sustain the rule as above set forth, and at times may have extended the construction to be given the provisions of exemption statutes. The widening of the scope of such statutes to permit a debtor to defraud, may find support in the "weight of authority", but I believe such weight to be contrary to sound legal reason and the true spirit of the law as evidenced by cases cited hereafter.

A debtor may assign or transfer exempt property for a valuable consideration, or he may in good faith give it away, even to strangers, *unless specifically restricted by statute.* (25 Cor. Jur., pp. 106, 107, secs. 182, 184.) At the time of the assignment of the insurance policies herein, the specific restriction is found in Civil Code, section 3439: "Every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor." This provision does not apply when the transfer or assignment is made for the benefit of creditors (*Brainard* v. *Fitzgerald,* 3 Cal. (2d) 157 [44 Pac. (2d) 336]), which is not the fact in this case. Civil Code, section 3442, provided "that any transfer or encumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors". (*Shiels* v. *Nathan,* 12 Cal. App. 604 [108 Pac. 34].) The

fraudulent intent of the transferee is immaterial (*Tobias* v. *Adams,* 201 Cal. 689 [258 Pac. 588]; *Lefrooth* v. *Prentice,* 202 Cal. 215 [259 Pac. 947]), likewise the intent of the transferor is of no substantial consequence (*Wright* v. *Salzberger,* 121 Cal. App. 639 [9 Pac. (2d) 860]; *Atkinson* v. *Western D. Syndicate,* 170 Cal. 503 [150 Pac. 360]), although in the present case the court found that Samuel Beck *was insolvent, without sufficient assets to meet his obligations; that he knew that he had but a short time to live and that the assignment was made to defraud his creditors.* A person is presumed to intend the natural consequence of his voluntary acts. (Code Civ. Proc., sec. 1963, subd. 3.)

In *Navassa Guano Co.* v. *Cockfield,* 253 Fed. 883, 886 [6 A. L. R. 1168], the court said: ''When he sought to change the beneficiary, he knew that death was near, and that the proceeds of the policy, if not transferred, would soon be paid to his executors; and he was therefore chargeable with the results of his action, even if he lacked the intention of defrauding his creditors. In short, we are convinced that the transaction under review was fraudulent as to creditors and must be so adjudged.''

In *Walter* v. *Hartman,* (Tenn.) 67 S. W. 476, 479, the court said: ''Up to the time of the assignment the assured had a valuable property right in the policy, which he could transfer in a legitimate manner, and of which fraud could be predicated if the transfer were fraudulent in fact or in law. In other words, the insured had a valuable property right in this chose in action while he lived, and which would have passed to his personal representatives upon his death, for the benefit of his creditors, unless it had been disposed of in some lawful manner by the assured while living.'' (See *Gould* v. *Fleitmann,* 188 App. Div. 759 [176 N. Y. Supp. 631].)

In *McKown's Estate,* 198 Pa. 96 [47 Atl. 1111], a husband made a life insurance policy payable to his administrators, executors or assigns. During insolvency he assigned the policy to his wife. The claim of the wife was rejected as in fraud of his creditors.

In *Pope* v. *Carter,* 210 Ala. 533 [98 So. 726, 727], the court said ''Proceeds of policies so carried by the husband, payable to his estate, and transferred to his wife by a change of the beneficiary named in the policies made after the hus-

band has become insolvent, without valuable consideration, are subject to the claims of the husband's creditors existing at the time of such transfer. Such transaction is subject to all the rules governing fraudulent conveyances.''

*Holden* v. *Stratton,* 198 U. S. 202 [25 Sup. Ct. 656, 49 L. Ed. 1018], cited by appellants, is not in point. In that case the assured was alive and claimed the proceeds of a life insurance policy exempt from liability for his debt. In the instant case the assured is dead, and cannot claim an exemption if any existed; the claim here is by two strangers.

The majority opinion holds that ''no transfer of property made entirely exempt by statute, can be held to be fraudulent as to creditors''. This assignment was not entirely exempt. Exemption statutes have been enacted as protective measures, for the debtor alone, as in the case of those dealing with tools and implements of a mechanic necessary to carry on a trade. When the necessity to carry on the trade ceases, as for instance by the death of the mechanic, the purpose of the protective exemption no longer exists. During the life of a mechanic, if solvent, his tools or implements may be disposed of in any manner that he may designate, but if insolvent, and the disposition thereof be made with intent to defraud creditors, then the benevolent protective provision of exemption no longer has application, and the property is subject to execution by the creditors. (*Ionia County Savings Bank* v. *McLean,* 84 Mich. 625 [48 N. W. 159].) A second classification pertains to the benevolent guarding or shielding of the interests of dependents. In other words, certain exemptions are operative during the life of the debtor, and other exemptions apply only after the debtor's death, at which time the benefit of the exemption, as outlined in section 690.19, may be claimed by and is available only to the ''surviving spouse and minor children''. (Prob. Code, sec. 660, *supra.*) These appellants do not come within such classification. In other words, two possible exemptions might arise under the law and the facts in this case, namely, the exemption after death, which could be claimed only by the widow or minor children, and the exemption before death, which might be waived by the debtor or by the failure of the creditor during the life of the debtor to take advantage of the assignment.

A conveyance of personal property, otherwise exempt, may under certain circumstances be construed as a waiver. In *Kay* v. *Furlow*, 178 La. 637 [152 So. 315], a practicing attorney, after giving a chattel mortgage on his law library and office furniture, defaulted in the payments. On a hearing for injunction, the attorney claimed exemption upon the theory that the library was necessary to his livelihood. At page 317, the court said: "Defendant, in consenting to the mortgage, by necessary implication, waived his exemption, otherwise he would not have been granting a mortgage at all, but only a mere sham. The implied waiver, as appears from the authorities cited, is a valid waiver. The waiver, as we have seen, does not violate public policy." (25 Cor. Jur., p. 107, sec. 185; p. 114, sec. 196; 11 Ruling Case Law, p. 544, sec. 61.) The general rule that a debtor's waiver of exemption is against public policy grows out of the principle of protection for the family. However, when the family is not involved, the waiver may exist either expressly or impliedly. Particularly is this true if the transfer is made, not in good faith, but with fraudulent intent. (22 Am. Jur., pp. 100, 101, secs. 131, 132.)

It should be noted that while it is proper, legal and effective in good faith to assign a life insurance policy, any right of exemption in connection therewith is a statutory right to be enjoyed by the person directly affected and benefited. The privilege of exemption is personal and the rights thereto rest primarily in the debtor. The right of exemption is not vendible or assignable. (22 Am. Jur., p. 90, sec. 119.) Considering the purported purchase of the right of exemption, the court in *Eberhart's Appeal*, 39 Pa. 509 [80 Am. Dec. 536, 539], said: "It comes into existence only by the act of the debtor, and the time and form of his act necessary to give it vitality are regulated by legal rules: *Bowman* v. *Smiley*, 31 Pa. (7 Casey) 225 [72 Am. Dec. 738]; *McAfoose's Appeal*, 32 Pa. (8 Casey) 276, 277. If he do not claim the exemption, he waives it. That is, the right of exemption, a merely abstract right, as it exists in the statute, becomes a vital, personal, effectual privilege, when the debtor asserts it timely. But waived by him, no one else, however he may claim under the debtor, can set it up to hinder the creditor." (See *Murdy* v. *Skyles*, 101 Iowa, 549 [70 N. W. 714, 63 Am. St. Rep. 411].)

Before death, the exemption applies only to the surrender value of the policy. The policies herein were never surrendered; hence the debtor did not claim the exemption. There is a proper time to claim an exemption and a proper mode to follow. A debtor, not having claimed the exemption during his lifetime, waived the right as to that period. (22 Am. Jur., p. 103, sec. 135.) If there was no waiver by reason of failure to claim the exemption, then the debtor waived by assignment. In *Wyman* v. *Gay*, 90 Me. 36, 38, 39 [37 Atl. 325, 60 Am. St. Rep. 238], the court said: ''Exempted property is a personal privilege of the debtor. He may waive it, and certainly does waive it when he conveys it to another. His interest in the property is then gone. . . . The plaintiff also sues to recover $345.52, the agreed value of two policies of insurance on the insolvent's life, conveyed by him to the defendant in fraud of the insolvent law, and thereby converted to his own use. The same defense as to the chattels is interposed. Revised Statutes, c. 49, sec. 94, is invoked. That section exempts all such policies where the annual premium is less than $150, meaning on each one, from 'attachment and from all claims of creditors, during the life of the assured'. This statute means to allow the assured such property, while he holds it, free from the claims of creditors, but when he sells it for cash, he will have received its equivalent, and the purchaser will hold an investment, a security that is just as much a part of his estate as a bond or promissory note would be. So when the insured assigns his policy in payment of a debt, the policy becomes assets in the hands of a creditor, and he should not thereby be permitted to gain a fraudulent preference in his own favor over other creditors of the same debtor. When the assured parts with his policy, he places it without the protection of the statute. It then becomes the same as any chattel, and the title goes to the assignee in insolvency, rather than to work a fraud. Any other doctrine might be made to thwart the equality of creditors and make it possible for a dishonest debtor to give his property to a single creditor. He might take his entire assets and procure numerous policies of insurance, with annual premiums of not over $150 on each as in this case, and appropriate the whole of them to a favored creditor.''

''A reasonable construction should be given to the statute, and not one which would pervert its benevolent design, and

enable gross frauds to be perpetrated under color of law."
(*In re Baldwin,* 71 Cal. 74, 78 [12 Pac. 44].) "But exemption laws are not intended to aid individuals to avoid payment of their honest debts and should not become a means of enabling them to escape their obligations arising after they have ceased to come properly within the purview of the exemption statute." (22 Am. Jur., pp. 7, 8, sec. 4.)

The majority opinion relies in part upon homestead exemptions, citing *Montgomery* v. *Bullock,* 11 Cal. (2d) 58 [77 Pac. (2d) 846]. Though somewhat analogous, homestead exemptions and insurance exemptions are not identical. The homestead exemption feature refers to real property and is controlled by division 2, part 4, title 5, chapter 1 of the Civil Code; the personal property exemptions are covered by part 2, title 9, chapter 1 of the Code of Civil Procedure. (See Civ. Code, sec. 1240; Code Civ. Proc., sec. 690.)

Appellants also call attention to *Montgomery* v. *Bullock, supra,* and contend that as regards exemption provisions there is no distinction between homesteads and insurance policies. The distinction appears in the decision at page 62: "As the doctrine bearing upon conveyances made to hinder, delay, and defraud creditors has no application to the creation of a homestead, the homestead here was not invalidated by reason of the pendency of plaintiff's tort action, and it was exempt from execution or forced sale in satisfaction of the judgment for damages later obtained by plaintiff in said action." Unless a judgment is obtained before the declaration, a homestead is exempt from execution. (Civ. Code, secs. 1240, 1241.) It seems reasonable to conclude that more strict rules should prevail to protect the home of a debtor and his dependents, than to protect a debtor who, having no dependents, parts with his property with the dishonest intention of benefiting one creditor to the disadvantage of others.

Under section 690.19, *supra,* the claim of exemption must be made upon execution. Exemption privileges, somewhat like mechanics' liens, are personal rights granted by the legislature (*Mills* v. *La Verne Land Co.,* 97 Cal. 254 [32 Pac. 169, 33 Am. St. Rep. 168]; *Burr* v. *Peppers Cotton Lumber Co.,* 91 Cal. App. 268 [266 Pac. 1025].) It was never intended that a debtor with intent to defraud, should be permitted to barter, sell or assign the exemption personal to himself or his dependents.

Appellants, seeking to secure to themselves the benefit of this exemption, contend that the assignments having been made of the policies, the assignees stood in the assignor's shoes and were entitled to all the benefits, privileges and immunities accruing to the insured. (*Beaumond* v. *Prudential Ins. Co.*, 5 Cal. App. (2d) 632 [43 Pac. (2d) 820].) As stated before, there is no doubt that an assignment of an insurance policy may be made, but, if made to defraud, may not prevail against those related to the assured through affinity or consanguinity, or against *bona fide* creditors.

An exemption is not a vested right (*Estate of Pillsbury*, 175 Cal. 454 [166 Pac. 11, 3 A. L. R. 1396]), but rather a favor granted through humanitarian motives to the dependents of a debtor. It is dependent upon the will and reasonable discretion of the legislature. Exemption laws are based upon a public policy of the state, which seeks not only to protect the debtor and his family, but the welfare of its citizens against the debtor or his family becoming a burden upon the public. Such statutes are to be liberally construed so as to effectuate the benevolent purpose intended. (*In re McManus*, 87 Cal. 292 [25 Pac. 413, 22 Am. St. Rep. 250, 10 L. R. A. 567]; *Holmes* v. *Marshall*, 145 Cal. 777 [79 Pac. 534, 104 Am. St. Rep. 86, 2 Ann. Cas. 88, 69 L. R. A. 67]; *Estate of Crosby, supra.*)

It is necessary to plead an exemption. In the present case, appellants, in the answer to the pleading in intervention, alleged that "the proceeds of said policies are not subject to execution or the claims of any creditors of said deceased". "The established rules as to pleadings in general are applicable to actions involving claims to exemptions or to actions for interference with exemptions. While a debtor should not be deprived of his right of exemption through a technical following of statutes pertaining to pleading, in pleading the exemption it is generally insufficient merely to state that the property is exempt, since such statement is but a conclusion of law. The debtor should set forth specifically the facts essential to his claim." (22 Am. Jur., p. 118, sec. 155.) Assuming that, in the absence of a special demurrer, the pleading may have been good, nevertheless it is not clear from the pleadings or the findings whether appellants claim upon the theory that, prior to his death, they stood in the assignor's shoes, or whether they claim as the representatives

of a widow or children. When considered in determining what interest, if any, appellants obtained through the assignment prior to the death of Samuel Beck, and in connection with the findings pertaining thereto, the question is worthy of consideration. The findings show that the policies were issued on November 30, 1933, and December 4, 1933; that they were assigned to appellants on October 29, 1935, and October 30, 1935. Samuel Beck died on April 13, 1936, less than three years after the issuance of the policies. Insurance Code, sections 10151 and 10152, relate to the value of life insurance policies on default of premium payments after three years. At the time of the assignments, the surrender or intrinsic value would have been practically nil. The finding of the court "that it is true that prior to the death of the said Samuel Beck, the said Evelyn Corbett represented to Samuel Beck that Albert A. Albeck would accept the sum of Fifty ($50.00) Dollars and that said Albert A. Albeck did represent to said Samuel Beck that he would accept the sum of One Hundred Twenty-five ($125.00) Dollars in full and complete payment of all sums alleged to be owing to him by the said Samuel Beck and that Albert A. Albeck did offer to reassign said policies of insurance to the said Samuel Beck upon the payment of said sum. That before said sum could be paid and the policies reassigned to said Samuel Beck, he died", is indicative of appellants' valuation of the policies prior to the death of Samuel Beck as compared with the amount deposited in court by the Prudential Insurance Company of America, a corporation, interpleader herein namely, $2,064.32. In other words, it may be assumed that appellants' interest in the assignments made in contemplation of impending death was not based upon the then valuation, but upon the valuation after death.

The findings do not negative possession of other insurance. If appellants' rights depend upon an exemption statute, they should have proven all matters required to bring them within such statute, including the fact that premiums on all insurance did not exceed $500. If the premiums did exceed that sum, appellants, if entitled to anything would be entitled only to a *pro tanto* exemption. (Code Civ. Proc., sec. 690.19, *supra*.) The majority opinion holds that appellants established a *prima facie* case. Though *prima facie* evidence is presumptive in character, I am unable to agree with the find-

ing that "each of said policies required the payment of premiums in the sum of . . . $4.32 a month" is presumptive evidence that the premiums of "*any* life insurance" policy (section 690.10, *supra*), that might have been theretofore or thereafter taken out on the life of Samuel Beck did not exceed $500. (Italics added.) It was incumbent upon appellants to prove that each of them belonged to the class entitled to the exemption, and that the property was in fact exempt. (*Briggs* v. *McCullough*, 36 Cal. 542.) The court did not find on this question specifically, and it does not appear that the question was presented as an issue in the pleadings, except that, in the answer of appellants "to pleading in intervention designated as answer" by the administrator, it is alleged "That the total amount of annual premiums paid under said policy of insurance was a sum greatly less than Five Hundred ($500) Dollars per year and the proceeds of said policies are not subject to execution or the claims of any creditors of said Deceased", but this allegation is simply to the effect that the policies are not subject to execution or the claims of creditors and does not directly raise the issue that appellants may claim the benefit of this particular exemption clause.

In *Delanoy* v. *Delanoy*, 216 Cal. 23, 27 [13 Pac. (2d) 513], the court said: "In order to warrant the reversal of a judgment for failure to find on an issue it must be shown by the *record on appeal* that evidence sufficient to sustain a finding for the complaining party was introduced. (24 Cal. Jur., 947, sec. 189.) No such record has been presented. We must assume, therefore, that had a finding been made on the issue it would have been adverse to appellant." (5 Cor. Jur. Secundum, p. 1200.)

An insurance policy is property. (*Blethen* v. *Pacific Mutual Life Ins. Co.*, 198 Cal. 91 [243 Pac. 431]; *Dixon Lumber Co.* v. *Peacock*, 217 Cal. 415 [19 Pac. (2d) 233]; *Pope* v. *Carter, supra*.) The pecuniary value thereof may be assigned upon the theory that the insurer has promised to pay an amount upon compliance with the terms of the policy. Certain interests may vest immediately, but the ultimate interests of the payee, beneficiary or assignee, do not vest until the termination of the period of the policy.

A life insurance policy is exempt only when the facts are within the terms of section 690.19. In the instant case Beck was an insolvent and the rights of his creditors could be ascer-

tained, and to that extent had become established before the insurance policy as property was transferred. A claim in a probate proceeding, though it may be contested by interested parties, is when allowed an acknowledged debt and is equivalent to a qualified judgment in an action such as is here presented. (Prob. Code, sec. 713.) A life insurance policy is a chose in action and liable for the payment of the debts of the party to whom issued. (*Catchings* v. *Manlove,* 39 Miss. 655.) A voluntary transfer of a chose in action, without consideration, for the purpose of defeating creditors is fraudulent. (*Burton* v. *Farinholt* [Kenan], 86 N. C. 259; *Aetna Nat. Bank* v. *Manhattan Life Ins. Co.,* 24 Fed. 769.)

In *Ionia County Savings Bank* v. *McLean, supra,* pages 629, 630, the court said: ''The argument is not sound that, because he could insure his life under this statute for the benefit of his wife and daughter, therefore he can assign a policy which was not taken out for their sole benefit, and thus place it beyond the reach of creditors. The distinction between the two is obvious. He might have transferred this, like any other property, to his wife or children without consideration, when solvent; but when, being insolvent, he transferred it without a valuable consideration, it was subject to the payment of his debts, and the assignment was void.'' (*Friedman* v. *Fennell,* 94 Ala. 570 [10 So. 649].) Whatever rights the assignees may have obtained prohibiting the insured from further changing the policies by naming other beneficiaries, or in prohibiting him from hypothecating the policies for a loan or otherwise, terminated upon the death of the insured. *Estate of Miller,* 121 Cal. 353 [53 Pac. 906], wherein certain statements, mere *dicta,* are claimed to be contrary to the theory adopted herein, is dissimilar in that in the Miller case no claim was made that anyone had been defrauded. In that case the widow was the one entitled to the exemption. (*Estate of Crosby, supra.*)

After the death of the assured, whether designated as the assignees or beneficiaries, appellants herein, if they were entitled to anything at all, became entitled to receive all advantages accruing under the terms of the policies. Though designated as assignees, after the death of Samuel Beck they occupied the position of beneficiaries as that term is used and understood in any ordinary insurance policy.

Appellants, occupying the position of beneficiaries, fall "within" the holding in *Bryson* v. *Manhart*, 11 Cal. App. (2d) 691 [54 Pac. (2d) 778].) In that case there was a fraudulent change of beneficiary; in the present case there was a change of beneficiary through fraudulent assignments. It should be noted, however, that the Bryson case was decided without reference to exemption statutes. There a public administrator sought to recover from the estate of an insured decedent the proceeds of certain insurance policies. The aunt of the decedent on behalf of herself and as trustee for certain relatives had entrusted to her nephew a sum of money to be invested and reinvested in their behalf. Before the funds were so entrusted to the nephew, he carried but one insurance policy, the value of which was $4,000. Subsequently his insurance was increased to $200,000, carried in approximately thirteen policies, with his wife as beneficiary. Upon the wife's death, the nephew's estate became the beneficiary until the nephew's sister was so designated. The evidence indicated that about four months later the nephew committed suicide. A claim was filed by the aunt against his estate and approved by the public administrator and the court, covering the amount due from the nephew. At the time of the death of the wife and thereafter, the sister of decedent had knowledge of the impoverished financial condition of her brother. The insurance companies paid the amounts due under the policies and the proceeds were deposited in five different banks under fictitious names. The sister repaid certain loans made to her brother by friends, made good some worthless checks and settled certain claims against decedent. The trial court held in favor of the sister and her husband. On appeal, the court at pages 696 and 697, said: "A review of the evidence leads unerringly to the conclusion that at the time of the transfers of property and changes of beneficiary the decedent was hopelessly insolvent and that the trial court's findings that the transfers and changes of beneficiary were not made to defraud creditors are not supported by the evidence. This conclusion must be reached upon a consideration of the evidence in a light most favorable to defendants." "In view of the facts as set forth above it is clear that the transfers of the real estate and personal property are void. The transactions are covered by section 3439 of the Civil Code; . . . The contention of plaintiff, that creditors may recover proceeds of

insurance policies paid as the result of fraudulent changes of beneficiary by the insured while insolvent, must be upheld."

Appellants call attention to *Truelsch* v. *Northwestern Mutual Life Ins. Co.*, 186 Wis. 239 [202 N. W. 352, 38 A. L. R. 914], and liken it to the Bryson case. There is a similarity of facts, but in the Truelsch case the purpose of the *cestui que trustent* was to trace money into a trust fund. There is no inconsistency in the two cases. In the Bryson case, plaintiff was a public administrator who sought the proceeds of insurance policies to pay a claim approved by the probate court. In the Bryson case, in support of its conclusion, the appellate court quoted, in some instances extensively, from *Pope* v. *Carter, supra*; *Continental Nat. Bank* v. *Moore et al.*, 83 App. Div. 419 [82 N. Y. Supp. 302]; *Navassa Guano Co.* v. *Cockfield, supra*. I agree with the conclusions there reached. The court in the Bryson case also distinguished *North British etc. Ins. Co.* v. *Ingalls*, 109 Cal. App. 147 [292 Pac. 678], by calling attention to the fact that in that case there was no change of beneficiary and that the insured was not insolvent at the time of his death.

Appellants stress the decision in *Hoeft* v. *Supreme Lodge Knights of Honor*, 113 Cal. 91 [45 Pac. 185, 33 L. R. A. 174], in which the plaintiff wife sued to recover an insurance benefit under a certificate of defendant lodge issued in her name at the request of her insured husband. The lodge paid the amount covered by the certificate into court. It appeared that a certificate originally named the insured's wife as the beneficiary. The wife died and a certificate in his children's favor was issued. Subsequently, on the remarriage of the husband, he surrendered the certificate in his children's favor, and had one issued designating his second wife as the beneficiary. Children, the issue of the first marriage contested upon the ground that the change was made by their father as the result of fraudulent representations, etc., made to him by the second wife. The children had no standing in court. They did not seek through probate proceedings to have any property set aside for their use or benefit. They did not stand in the position of creditors as did the administrator in the present case.

The conclusion reached in the majority opinion is the result of an adherence to a rule established by weight of authority as the outgrowth of the desire of courts in early decisions

to protect the needy. Subsequently language used without mature consideration of all the possible contingencies that might arise has been aborted so that today the dishonest debtor may by reference to a few sentences in legal text books justify his dishonesty. Pursuing the subject further, however, it is apparent that legislatures in order to correct the evil have enacted express statutory restrictions, as in this state by Civil Code, division 4, part 2, title 2.

Benevolent exemption statutes, enacted to protect an impoverished debtor or his wife and children to live and eke out an existence, should not be extended in scope to assist a deceased debtor, with no dependents, in the perpetration of a fraud upon his innocent creditors. I am convinced that factually and legally this judgment should be affirmed.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal was denied by the Supreme Court on July 29, 1940.