[Civ. No. 4807. Fourth Dist. Sept. 2, 1953.]

JOSEPH W. BREEDEN et al., Respondents, v. ROBERT SMITH et al., Appellants.

R. M. Switzler for Appellants.

Walter Wencke for Respondents.

BARNARD, P. J.—This appeal involves the legal effect of a homestead and the subsequent levy of a writ of execution under unusual circumstances.

The defendant Robert Smith, aged 73, was building a house for himself. He employed Joseph Breeden, aged 63, to assist him. On February 15, 1951, Breeden fell from a plank and was injured. On April 9, 1951, Smith and his wife deeded the property on which the house was located to their son, Stanley Smith. The senior Smiths moved into the house about May 1, 1951, and have since resided there.

On August 22, 1951, Breeden and his wife brought this action. The first count of the complaint alleged a cause of action for damages, with a failure to carry compensation insurance or to secure permission to self-insure. The second count alleged that the levy of an attachment "will be made" upon this property, as permitted by section 3707 of the Labor Code; that the conveyance to the son was made with intent to defraud creditors; and that the son received and accepted that deed with knowledge of this intent, and with the intent "to hold said land as a secret trust for Robert Smith." The prayer was for damages, to have the deed set aside, and that this land be adjudged subject to the lien of the attachment.

On October 22, 1951, Robert Smith filed a declaration of homestead covering this property. On October 24, 1951, he filed an answer denying all material allegations of both counts of the complaint, and alleging contributory negligence. On November 27, 1951, the Industrial Accident Commission entered an award in favor of Breeden and against Robert Smith.

This action was tried on July 23, 1952, without a jury. In its findings, filed on August 12, 1952, the court found that at the time of the injury Breeden was employed by the defendants; that on April 9, 1951, Robert Smith conveyed all his right, title and interest in this property to Stanley Smith without consideration and with intent to defraud his creditors; that the property was then worth $8,000; that Stanley Smith

accepted and received this deed with the intent to hold the property "as a secret trust for said Robert Smith"; "that since said conveyance the title to the above described real property has remained in the name of" Stanley Smith; that despite such conveyance Robert Smith and his wife remained in exclusive possession of said property until January 1, 1952, when Stanley Smith and his wife moved in and shared such possession; that on November 29, 1951, the Industrial Accident Commission entered an award in favor of Breeden and against Robert Smith; and that ever since said conveyance Robert Smith has been unable to pay this award. As conclusions of law, it was found that on February 15, 1951, Breeden became a creditor of the senior Smiths; that said conveyance was fraudulent as to creditors, and the senior Smiths became insolvent by reason thereof; and that the plaintiffs were entitled to a judgment decreeing that this conveyance was fraudulent as to Breeden, and should be set aside and annulled "insofar as it affects the rights of" Breeden. Judgment was entered on August 12, 1952, adjudging solely that this conveyance was fraudulent as to Breeden, and "hereby is set aside and annulled insofar as it affects the rights of the plaintiff Joseph W. Breeden." No appeal was taken from that judgment.

On August 4, 1952, before those findings and judgment were filed Robert Smith filed a second declaration of homestead, in which it was stated that a previous one had been filed. On October 31, 1952, a writ of execution was levied on this property, based on this judgment, although the court had made no findings with respect to the issue of damages and no judgment for money had been entered, other than for costs. Sale of the property was set for December 17, 1952.

On December 3, 1952, Robert Smith and his wife filed notice of a motion for an injunction restraining the plaintiffs from selling this property. This motion was heard on December 16, 1952, before another judge, and the declarations of homestead were received in evidence. The matter of a homestead had not theretofore been mentioned in the pleadings, findings or judgment. In ruling on this motion the judge said that the findings clearly stated that the senior Smiths had conveyed all their "right, title and interest" in the property to their son; that he felt bound by those findings; that he had reluctantly concluded that he had no right to interfere with the determination that the property was subject to execution sale; and that he could not tell from the

judgment whether or not it was intended as an adjudication that there was no homestead on the property. An order partially denying the motion was entered on December 16th, permitting the defendants to apply for relief in the department where the action had been tried, and staying execution for a limited time. On December 19, 1952, the defendants filed notice that they would move the court to correct its judgment of July 23, 1952, on the ground that the court had inadvertently omitted an adjudication of title with respect to whether or not the senior Smiths, at the time of the conveyance to their son, intended to and did part with all their right and interest in the property, or whether they retained some right and interest which was subject to their homestead rights. This motion was denied by the judge who tried the action, his order stating that there was no "inadvertent omission" in the findings or judgment. Thereafter, the other judge entered an order refusing to restrain the sale. This appeal was taken from that order.

There is nothing in the record to show that an attachment was ever levied and, in any event, a homestead was filed long before judgment was entered. The controlling question is whether or not a valid homestead existed. Its validity is not attacked except for respondents' claim that since the court found that Robert Smith conveyed "all his right, title and. interest" in this property to his son on April 9, 1951, it follows that he then possessed no interest which could be homesteaded and any homestead declaration made thereafter was a nullity.

While the court found that all right and title had been conveyed to the son by the deed of April 9, 1951, and that "title" had remained "in the name of" the son, it further found that such title had been thus accepted and received by the son in trust for the father, and there is nothing to indicate that such situation was ever changed. It does not appear, therefore, that the father had no interest in this property which could be homesteaded. The only thing the judgment purported to do was to declare this conveyance fraudulent as to this creditor and to set it aside insofar as it affects his rights. There being no "inadvertent omission," it clearly appears it was intended to do no more. It did not make any adjudication as to whether or not there was a valid homestead on the property, no such issue having been presented, and it did not adjudicate that the property

would be subject to sale on an execution to be issued pursuant to that judgment. The practical effect of the findings and judgment was to hold that the father had been the real owner of the property since the conveyance to the son. The father had a very substantial interest in the property after the conveyance, in fact the full equitable interest, and the homesteads were filed before any judgment was entered.

While it must be assumed that the finding, that the conveyance was fraudulent insofar as it affected Breeden, was supported by the evidence, the only evidence in the record before us is to the effect that, as between the parties, the deed was intended to take effect only on the death of the grantors. There is some inconsistency in respondent's position in relying on the fact that the deed was void insofar as it affected his rights for one purpose, and relying on its validity as affecting his rights for another purpose.

Had the appellants filed a homestead before this conveyance was made the respondents would have had no enforceable claim against this property. The judgment in this action did not establish such a claim, and nothing in the findings therein establishes the right to sell the property. The principles involved in the cases setting forth the general rules are not favorable to the only attack here made upon these homesteads. (*Montgomery* v. *Bullock,* 11 Cal.2d 58 [77 P.2d 846]; *Prudential Ins. Co.* v. *Beck,* 39 Cal.App.2d 355 [103 P.2d 241].) A homestead was filed shortly after this suit was brought and another one was filed before the judgment became a lien. (*Yager* v. *Yager,* 7 Cal.2d 213 [60 P.2d 422, 106 A.L.R. 664].) The question of the validity or invalidity of the homestead was not raised or decided at the trial of the action. (*Duhart* v. *O'Rourke,* 99 Cal.App.2d 277 [221 P.2d 767].)

The court having found that the full interest in this property, other than the bare legal title, was in Robert Smith all the time, nothing appears in the record which would adversely affect the validity of the homesteads filed before judgment was entered. In the absence of any showing that the respondents were entitled to a sale of the property on execution it was error to refuse the restraining order asked for. While the respondents could have proceeded under sections 1245 to 1259 of the Civil Code, if the circumstances warranted, no such procedure is involved in this appeal.

The order appealed from is reversed.

Mussell, J., concurred.